1823.
JUNE.

Lucas
vs
Latour

Trover, for goods mortgaged to secure a usurious debt cannot be sustained, unless the plaintiff has tendered the amount actually loaned.

If the party by whom such debt is contracted becomes an insolvent debtor, his trustee, under the insolvent laws, is equally bound to make such tender to entitle him to recover the goods mortgaged.

LUCAS, Trustee of JAMISON, vs. LATOUR.

APPEAL from *Baltimore* county court. This was an action of trover, brought by the appellant as trustee of *Jamison,* an insolvent debtor, against the appellee, to recover the value of 594 copies of a book called *Jamison's Domestic Medicine,* and 90 volumes of other medical books. The defendant pleaded the general issue; and at the trial the plaintiff gave evidence that he was regularly appointed trustee of *Jamison,* who was duly discharged under the insolvent laws of this state. *Jamison,* before he became insolvent, applied to the defendant for a loan of money, and the defendant, about the 1st of February 1818, loaned him $100, and between that time and the 1st of May, several other sums, making in the whole $500. At the time of the several loans the defendant received from *Jamison* a discount of from 2½ to 3 per cent a month for said loans; the loans were for 60 days each, and renewed at the end of the 60 days, when the same amount of discount was exacted. *Jamison* gave the defendant his promissory notes for the amount of each loan, and at the time of contracting the loans, deposited with the defendant the books and goods mentioned in the declaration, to be retained by him as a security until the money loaned by him, and secured by the promissory notes, was repaid. The books and goods were of the value of $2029. The plaintiff, after having been appointed trustee of *Jamison,* demanded the books from the defendant, who refused to deliver them, unless he was repaid the aforesaid sum of $500; which the plaintiff did not then, nor at any time afterwards, tender or offer to pay, nor did he offer to pay any part of it. On these facts the defendant prayed the opinion of the court, and their direction to the jury, that the plaintiff was not entitled to recover; which opinion and direction the court, [*Dorsey,* Ch. J. *Hanson* and *Ward,* A. J.] gave to the jury. The plaintiff excepted; and the verdict and judgment being against him, he appealed to this court.

The cause was argued before BUCHANAN, MARTIN, and STEPHEN, J.

*Meredith,* for the Appellant. 1. The pledge of the books, under the circumstances of the case, gave no lien

1823.

Lucas
vs
Latour

or title in them to the defendant. 2. Even should the defendant be considered as having a lien on them for the amount of money actually loaned to *Jamison*, with the legal interest on it, yet his refusal to deliver up the books, unless paid the whole nominal sum loaned, was wrongful, and amounted to a conversion. It is contended, that there was never any lien; that the contract was void in its inception, under our act of assembly relating to usury. All liens are bottomed on the contract, and this being illegal, was altogether void. This would be evident but for the case of *Fitzroy vs. Gwillim*, 1 *T. R.* 153; but that case is founded on false principles; there, Lord *Mansfield* said the parties were in *pari delicto*, and that the rule *potior est conditio possidentis*, ought to prevail. Thirty years before, he had decided otherwise in *Smith vs. Bromley, Doug.* 695, *(note.)* In *Clarke vs. Shee and Johnson,* 1 *Cowp.* 197, he takes a distinction between the violation of two sorts of prohibitions, enacted by positive law, in respect to contracts. 1. To protect weak or necessitous men from being overreached, &c. There the rule in *pari delicto, potior est conditio defendentis*, does not hold. 2. Prohibitions founded upon general reasons or policy. There both parties offending are equally guilty; *par est delictum, et potior est conditio defendentis.* The same distinction is laid down by his Lordship in *Browning vs. Morris,* 2 *Cowp.* 790. It is unaccountable how Lord *Mansfield* should, in *Fitzroy vs. Gwillim*, have nonsuited the plaintiff. This was among the last of his decisions, and soon after he was compelled, from age and infirmity, to retire from the bench. A motion was made to set aside the nonsuit, and the cases of *Clarke vs. Shee & Johnson*, and *Browning vs. Morris*, were relied on; but his lordship shifts his ground, by saying it was an equitable action. He was remarkable for his attempt to mould most actions into equitable actions. The court of equity only varies as to the mode of relief. Why is this an equitable action? Suppose a contract for the sale of land on a usurious consideration, and an ejectment brought by the seller to recover it back, would it be said it was an equitable action? Here the plaintiff does not apply for relief upon equitable grounds. He goes upon his strict legal right. The case of *Hindle vs. O'Brien*, 1 *Taunt.* 414, recognizes and is founded upon the same principle. But that case was

overruled in *Roberts vs. Goff*, 4 *Barnw. & Alder.* 92. The rule in equity and at law is different. The case before the court is to be distinguished from that of *Fitzroy vs. Gwillim*, and *Hindle vs. O'Brien.* Here the plaintiff is a trustee of an insolvent debtor, and the rule does not apply to the assignees of a bankrupt. It may be admitted, that legal liens exist against assignees; but illegal liens do not. Assignees of a bankrupt are not bound to pay what is due on usurious contracts. *Ex parte Skip*, 2 *Ves.* 489. The rule is, that a usurious lender is not permitted to prove his debt against the bankrupt. Here the trustee is no party to the illegal contract, and does not come within the rule laid down in equity. Liens may be waived by the conduct of the parties. *Cortelyou vs. Lansing*, 2 *Caine's Cases*, 214. This is applicable to the case before the court. The defendant refused to deliver the books unless the whole sum was paid; a tender, then, of the true sum due, was wholly useless. If a creditor, whose claim is barred by the statute of limitations, gets possession of the debtor's goods on which he had a lien, he may hold them until he is satisfied. But there would have been no lien if the *remedy* had been taken away. *Spears vs. Hartly*, 3 *Esp. Rep.* 81.

*Mayer*, for the Appellee. In this case the plaintiff asks back from the defendant in effect not only what the law considers improper for the defendant to have exacted, but that too which he might lawfully have stipulated for. We contend, that the pledge here shall avail for the principal lent, and legal interest; the plaintiff denies that it ought to secure even that. The pledge, considered in reference to the ultimate sale and liquidation of it, may be treated here, as a virtual payment by the defendant of the money borrowed by him. And the contract, in reference to it, may be considered as executed; not merely executory, and while so, liable to be arrested in its progress to consummation. The demand of the plaintiff is to be viewed on the footing of, and subject to the principles which regulate reclamations by borrowers from usurious lenders. Much as has been said about the innocency of the borrowers, and the relative disparity of blame between them and lenders, it is nevertheless certain, that there was a time, and a very long period too, when the borrower could not recover even the usurious excess of interest paid by him on the loan.

1823.

Lucas
vs
Eaton.

*Tomkins vs. Bernet*, 1 *Salk.* 22. Now the law has relented on this score; but still so far considers the borrower involved in the fault of the transaction, that it will not suffer him to recover *more* than the *usurious portion* of interest received, or rather it does not, as the plaintiff's counsel must pretend for the sake of their doctrine, consider the borrower so commendable in opposing the usurer as to reward him with the principal; and the fair interest upon it, as well as the usurious excess. The law authorises no such unseemly extortion; no such ungrateful game. The law restores to the borrower what, in good morals, he ought to ask; but so far as he has been benefitted, the law lays him under obligation to the usurious lender; and, since in the eye of law, the advantage of the loan is equivalent to the interest which the law allows, the borrower can reclaim no part of the principal, and none of that interest. Much as the law discountenances usury, it has never proceeded farther, and has reluctantly gone so far in reversing the deeds of the borrower himself. The plaintiff's counsel must show that courts have been kinder than cases prove them to be to these borrowers, before their conclusions can be recognized as law. *Browning vs. Morris,* 2 *Cowp.* 790. We may then safely admit, that the lender and borrower in usurious loans are not in *pari delicto.* The plaintiff must show, however, that the borrower is not only blameless, but entitled to more than commiseration, and that he is of such *pre-eminent merit* that, as a *public* benefactor, he must "receive the forfeit" of the lender's property, the principal and legal interest too, of the money which he himself has *solicited* and *enjoyed.* The pledge was delivered and vested, for what it might eventually produce, in the lender. Here is an act, then, as definitive as payment; and the analogy between the pledging, to serve a usurious contract, and a payment of money under such contract, is perfect. If, in case of payment, the borrower can recover back only the usurious part of the interest, and is forbidden to seize more, how, in the case of the pledge, can he ask back that, without paying that for which it stands, namely, the principal, and honest, legal interest? The law will not so lavishly indulge borrowers, and administer such prodigal equity to them, as to allow them to annul *their own acts* of pledging, without doing what honesty requires; so thought Lord *Mansfield* in the case, in

point, of *Fitzroy vs. Gwillim*, 1 *T. R.* 154. That was no romantic decision; it was not the over-generous concession of a waining judgment; as the counsel of the plaintiff, by their very ingenious *biographical* arguments and strictures, upon Lord *Mansfield*, would have the court to think. That decision reposes on sound law, and wholesome well defined principles, which trench not on the spirit of the statute of usury, much less give any undue ascendancy to the usurer. The borrower in that case; as here, asked the court to set aside, to *every intent* and *purpose*, his own act, and unconditionally to restore to him the pledge which he himself had deliberately devoted to the usurious contract. The court found that the common law and equity in that case beautifully harmonized, and they therefore, propounded to the borrower there, the maxim that *he who asks equity, must do equity*. They might to be sure, have spoken more directly; and decided in terms more rigidly technical, and in effect the same thing. But the judgment in *Fitzroy vs. Gwillim* is not to be considered as a *merely equitable* judgment, simply because the judge adopts a sententious maxim from equity law, within which his principles are comprized; and the rule for all such cases is condensed. The truth is, that when as there, and as, pointedly here, the law is asked by a party to annul his own act, to rescind a contract executed, they will see how far the *grievance extends* before they recognize any complaint. As to the lender's requisition of *legal* interest and principal of the money lent, they can acknowledge no cause of complaint, because the *law itself sanctions that* interest; they can denounce the retainer of the pledge only as to the excessive interest; and may therefore, upon tender of principal and legal interest, extinguish the pledge. Without such tender they will say that there is neither *damnum* nor *injuria*. In other words, in all cases where a court is asked to rescind, and recall, what *by convention of parties* has been already executed, they are in effect, completely at large to examine the *injury really sustained* by the individual, and have a discretion wide as the equity. and the *morality* of the case. Where a contract is to be rescinded, or a *deed*, as here, to be *undone*, the parties must be placed in *statu quo*. *Huntt vs. Silk*, 5 *East*, 449. Here then equity and law meet together; the position with which Lord *Mansfield* crowns his judgment is strictly legal, and not loosely equitable;

1823.

Lucas
vs
Latour

the borrower may have his pledge, but all parties must be put in *statu quo*; and the lender must, therefore, have back his money, and also the interest on it, because the borrower has enjoyed it, and the lender has, by the borrower's original *solicitation*, been deprived of it. And it is certain, that where a party seeks to shield himself from liability upon any contract on account of its unlawfulness, the law will regard the part which he bore in originating the transaction, and so far as he has instigated it, so far as a request of his toward it can be proved, and an advantage be shown to have been derived by him, it is studious to make him liable. Even when a party has *requested* his partner in illegal concerns to pay on account of them a sum of money, payable too only in virtue of their original unlawful association, he has been held liable, simply upon the force of the mere request, and the consequent advantage of the payment. To this effect are *Petrie vs. Hannay*, 3 *T. R.* 418. *Faikney vs. Reynous*, 4 *Burr.* 2069. *Roe vs. Galliers*, 2 *T. R.* 139. *Jamieson* here has requested the money, and, obtaining it, enjoyed an advantage from the request, and by the request gave birth to the unlawful act of which he now complains. He is in *delicto*; and certainly in the situation of one who ungraciously seeks to protect himself, and profit meanly, by his own wrong.

It is, in short, indisputable, that the law will relieve only so far as there is a sincere complaint and a substantial grievance, and will suffer no one, when it administers private *civil* redress, to be rewarded, as a champion of a *public* policy, with what his own acts, and his own contract, have elicited from another. It will relieve him against extortion; but any redress beyond that, the party, by his own connexion with the wrong, waives. Although, then, the law will allow the usurious part of interest paid to be reclaimed, no more can ever be recovered back; simply, because beyond that there has been no oppressive exaction, and beyond that it is not *honest* to solicit the aid of the law. So much effect does the law assign to the *requests* of the borrower, and so anxious is it to make his liability co-ordinate with the legal benefit enjoyed by him from the loan, that it holds him bound by a promissory note given by him to the lender for the legal amount of a usurious debt. *Barnes vs. Hedley*, 2 *Taunt.* 184. Here too the pledge might avail by its distinct force, as the promissory

note just referred to, to give the principal and legal inte-
rest.    All this is in the virtuous tenor of those decisions
which make binding all promises to pay what is morally
due, as in cases of promises to pay a debt barred, and even
decided to be barred, and thus judicially precluded, by
statute of limitations; or where a debtor promises, who is
relieved under his certificate of bankruptcy; or where one
of full age promises to pay what he has as infant contract-
ed to pay.    The borrower then, in resisting, or attempting
to undo, a lien, as in this case, becomes *an actor*, and throws
himself on the honest principles of law, and must be judg-
ed and bound as the debtors in the cases of the promises
alluded to.

2. On rigid principles of common law, however, it might
even be contended that the lien, so far from being annulled
by the unlawfulness of the bargain which it attends, is by
that very unlawfulness, transformed into an absolute pro-
perty; and that the goods in this case have become the len-
der's, free from all privilege of redemption by the borrow-
er.    For it is unquestionable law, that where an estate
is granted which is to cease, or an act is done which is to
be of no avail, when the unlawful condition (that is, un-
lawful as a *malum prohibitum*,) is performed, that estate
does at once become absolute, and that act can never be
recalled. *Co. Litt.* 206, b.    Here the lien was created, to
cease upon performing the illegal condition of paying an
usurious loan.    We might then say under the authority of
severe law, that the unlawful stipulation extinguishes all
right of reducing the pledge.    But Lord *Mansfield* does
not insist upon such harsh conclusions, but actually re-
laxes the severity of law in favour of the borrower, instead,
as is pretended, of favouring the lender at the expense of
common law, and upon an indefinite equity.

3. From what has been said of the character, as a mere
private complainant upon his real grievance, in which the
borrower here opposes our lien, or in any case seeks in-
demnification against a usurious lender, it is evident that
here he comes into court under auspices of common law,
upon common law rights, and not on any peremptory for-
feiture or concessions of statute.    He is subject to the
principles and distributive justice of bare common law.
The common law settles the borrower's liability, and
makes a contract for him with the lender, governed, to be

1823.

Lucas
vs
Latour

sure, by the statute against usury, but paying respect to that statute only so far that the amount of his liability be not inconsistent with the rates stipulated by the statute. If this be so, the common law divides or retrenches the condition of the pledge, according to reason, or, in other words, modifies it according to honesty, and in due regard to the advantage legally obtained by the borrower. 1 *Saund.* 66. *Hob.* 14. *Vent.* 237. *Co. Litt.* 206, b. *Comb.* 246. There can be no doubt as to what is honestly due here to the defendant, and as little as to the advantage which from that defendant the plaintiff has enjoyed. The benefit enjoyed by him, in consideration of law, is the principal, with interest such as the law prescribes that principal to be worth. If then, under the last proposition which has been defended, we do not show that the pledge has in fact become an absolute interest in the defendant in consequence of the unlawfulness of the condition upon which it was to be redeemed, there is, at least, reason, and indeed imperative law, for apportioning the condition of the pledge, for *relaxing* it in favour of the borrower, but not *extinguishing* it to enable him to grasp an undue advantage.

4. The present case cannot be brought within the direct terms of our statute, (1704, *ch.* 69,) against usury, so as to annul the pledge in question. That act refers to contracts and assurances, and essentially to no other matter of dealing or arrangement. It regards contracts in their executory state, not contracts executed, as a pledge is. In such a case it will leave the borrower to the redress, and subject the lender to the retribution, which the common law, administering relief under the mere policy of the statute, may afford. The pledge here is not an assurance, since the nature of a pledge does not forbid a suit to be brought on the contract which it is meant to support; but a pledge is incidental and accessorial in its relation to the transaction; it does not liquidate the contract, or absolutely impart a right, though for the purposes in view of the parties, it vests an interest, and operates as by a vested estate. The act too seems to refer to assurances which reserve the illegal interest; but here it was not the pledge by which undue interest was stipulated for; but the contract, to which the pledge was appendant, reserved it. Besides, the delivery of the pledge vested the interest in

it in the lender, and no deed, or writing of any kind, was necessary to transfer the title to it.  By an assurance, however, we understand a documentary evidence of title, or a conveyance *in pais,* or transfer by proceeding of record, of some interest, where it is proper or natural that the title or interest should in that way be conveyed.  The pledge here has not been so vested in the lender, and could not be construed as an assurance if it had been, since no such process is at all necessary to a transfer by way of pledge.  Within the words of the statute, or its immediate denunciation, this pledge cannot then be brought.  The statute will be construed, at least, as strictly as the statute of gaming in *England* was, within which, it is known, contracts were not esteemed to be, because only "securities" were mentioned in it.  Besides, although an act may by statute be void, it may avail to a certain purpose not within the mischief of the law.  Thus, though a devise to a Papist be void in *England,* it nevertheless operates as a revocation of a prior devise.  Here, since the pledge is, in fact, the execution of a contract, and since the object is already possessed, the law might respect the lien so far as it legally may allow interest, although the original contract, which it subserves, be void.  So under the statute of frauds, though a contract must be evidenced by a writing, yet a case of parol contract, and partial execution of it by possession or otherwise, is not within the statute.  Indeed, it is the natural power of a statute only to avoid contracts and assurances, as these terms have been interpreted by us, and it will not be construed to divest or render that which is already vested and executed, unless express words for the purpose be used in it.

5. It might too, be said, that this action of trover exists by a mere fiction of law; and since "equity subsists in those fictions," that a court of law will not, against equitable rights, suffer the fiction here to be used.  The action of ejectment reposing on a fiction or assumption of law, courts of law do for that reason exercise an equitable control in it, and may prescribe to either party equitable terms as the condition of their aid, when asked.  The gist of this action is the conversion complained of, and it is exclusively for the jury to find that.  10 *Co.* 57.  The object of the suit is damages, and a ground of personal injury is taken, and the jury are to regard the whole circum-

stantial justice of the case, and find a conversion, or esti‐
mate the extent of it, according to the real grievance experi‐
enced. The very nature of the action, and of the claim
of which it is the vehicle, requires the jury, under the di‐
rection of the court, to administer that equity so much
complained of here, and to bind the borrower to an honest
concession toward the lender. An action of *debt* on our
statute of usury, if we could suppose such an action ad‐
missible, would not admit of such an estimate of real da‐
mage, and would not call for such equitable discrimina‐
tion. So on an action of debt for escape against a sheriff, the
whole claim against the primitive defendant is recovered; but
by an action *on the case*, only the amount of the actual in‐
jury sustained by the plaintiff can be recovered. In
*Stone vs. Lingwood*, 1 *Strange*, 651, in an action of
trover, the defendant was allowed, by way of diminu‐
tion of damages, what he could not claim to deduct
as a lien, or a sett-off; and this could have been done
upon no other reason than the equitable power of the
court and jury, in an action purely for damages, to impose
on the defendant only the *true damage* occasioned by him
to the plaintiff. No honest man can be at a loss, with such
a criterion, to state how far the borrower here was in dan‐
ger of being injured, and on what terms the pledge ought
to be surrendered. Upon all these views, it is evident,
that the law requires here what equity would; that in this
case equity is law; and that the borrower can no more ex‐
pect to have the pledge restored, without repaying the mo‐
ney borrowed, and the legal interest on it, than one who
asks a court of equity to annul a usurious mortgage can be
exempted by such a court from first paying the principal
and legal interest upon the mortgage. It is said, how‐
ever, that here it is the trustee of the borrower, under the
application of the latter for the benefit of our insolvent
laws, who claims the property; and that such a trustee is
not to be treated and judged as the borrower himself would
be; and it is said, that such a discrimination was made be‐
tween a bankrupt and his assignee, in the case *Ex parte
Skip*, 2 *Ves.* 489. But on examination it will be found,
that the judgment proceeded on no distinction to that effect;
but the case was simply one where a dividend was refused
by the chancellor to be allowed to a sheer usurious claim,
attended by no pledge, or mortgage, or collateral interest, of

1823.

Lucas
vs
Latour

1823.

Lucas
vs
Latour

any kind. It is said too, that though in *Hindle vs. O'Brien*, 1 *Taunt.* 414, the case of *Fitzroy & Gwillim* is recognized; yet in *Roberts vs. Goff*, 4 *Barnw. & Ald.* 72, the decision in *Hindle vs. O'Brien* is overruled; and thus it is supposed that the principle of *Fitzroy & Gwillim* is rejected. But the truth is, that the decision in *Hindle vs. O'Brien* was incorrect, and could not be sustained by the principle laid down by Lord *Mansfield*, in *Fitzroy vs. Gwillim*; and it was right to reverse the decision; for the instrument which was supported in *Hindle vs. O'Brien* by the court, was absolutely void under the statute of usury. The case of an ejectment, *Chapline vs. Hogmire*, 1 *Harr. & Johns.* 29, in which a deed for usurious consideration came in question, and where the grantor recovered back the land, may be supported by the idea that there the deed, or assurance, was void, and declared therefore to be so by the court. And what has been urged as to the meaning of an assurance in the statute of usury, may show how much this case is distinguished from that of the ejectment. It is true, that in *Spears vs. Hartly*, 3 *Esp. Rep.* 81, the court determined that a debt barred by the statute of limitations could not be the ground of a general lien on a balance coming into the creditor's hands *after* that debt became due. But the lien claimed there was a lien by operation of law, and consequently could not be supported if the remedy by *law* for the debt was gone; since the lien is but another species of remedy to the creditor in such a case to obtain, or secure, payment of his debt. Besides, the debt and the object claimed under the lien had not been, as here, always co-existent, but the debt, in *Spears vs. Hartly*, became due long before the means came into the possession of the creditor, which he claimed by way of lien for the debt. But it is said, finally, that if we ever had a lien upon the property in question, we have lost our right to it under the equitable modifications which we now insist on, because, when the property was demanded, we insisted on the usurious terms of the contract, and not on the equitable claims which we now make. There is no doubt, that wherever a party by law may claim a lien, he may lose it if, when demand is made for the object, he does not assert his right to withhold it under the lien. But this principle can govern only in cases of liens by allowance or operation of mere law,

1823.

Lucas
vs
Latour

and is not applicable to a case like this, of *express pledge or lien*. In the former case the law allows the party to avail himself of such a lien, but until, and unless, he elects to take advantage of this constructive and optional lien, the law considers it no vested interest in him. Until actually asserted it is but a possible and inchoate right to the property, however well settled the privilege may be. Depending, therefore, entirely on the *claim in pais*, and on the mere *discretion* of the holder of the property, if, on the occasion proper for vindicating his right of lien, he makes a different claim, the law esteems him to have waived the lien which it allows him to secure to himself. The case of an express vested lien admits of no such waiver, and no such interpretation. It is not the *claim* of the general owner that can dissolve the lien, and put an end to his own act; it is only his compliance with the condition, or the legal portion of the condition, of that act, that can produce such an effect; and every man is bound and presumed to know the law, and how much, in such a case as this, he ought to,tender. Hence, it is concluded, that the lien has not been waived here, and that this court will respect it to the extent of our claim for the principal sum lent, and the legal interest on it, considering the trustee here as identified with the borrower, upon the unquestionable principle, that the assignee of claims, whether statutable assignees or others, succeeds to the rights of, and is subject to all the equities attached to, the assignor in regard to them.

*Williams*, on the same side. All the authorities are reconcilable, and do not impugn the decision of Lord *Mansfield*. The statute of usury is founded on a mistaken notion. This court will not go further than the courts in *England* have gone; and though they will enforce the *penalties* of the statute, they will not in civil cases, act severely upon the mere *policy* of it. The act of assembly, and the *English* statute, are similar. Usurious transactions are not void for all purposes. The contract cannot be enforced for the usurious interest; so far only is it void. If the true sum loaned in this case had been paid, there would be no lien for the excess of interest, and the property could not be held by the defendant. Lord *Mansfield* is not inconsistent in his decisions in *Fitzroy vs. Gwillim, Smith vs. Bromley, Clarke vs. Shee &*

1825.

Lucas
vs
Latour

*Johnson*, and *Browning vs. Morris*. It is admitted, that when the usurer comes into court to enforce his contract, he must be defeated. There is a difference between an attempt to enforce a usurious contract, and in defending it. *Fitzroy vs. Gwillim*, per Lord *Mansfield*. The borrower has remedy to recover all the excess of interest paid. *Clarke vs. Shee & Johnson*. If a man pays a sum of money by way of bribe, he cannot recover it back, because both parties are equally criminal. But where contracts are prohibited by positive statute, as is the case with usurious contracts, the parties are not *in pari delicto*, and the excess of interest may be recovered. *Hindle vs. O'Brien* was not an equitable application to the court; but the court considered the case as coming under equitable considerations, and applied to it the principles of Lord *Mansfield*. Although this decision was overruled in *Roberts vs. Goff*, yet the court, in this latter case, went upon the same principles as laid down in *Fitzroy vs. Gwillim*. This is an equitable action; and when the borrower comes into court in an equitable action, he must do equity. 7 *Bac. Ab.* tit. *Usury*, (G) 204, cites *Langford vs. Barnard*, 2 *Vern.* 170, pl. 156. *Bosanquett vs. Dashwood*, *Cas. temp. Talb.* 38. The case of *Spears vs. Hartly* is analagous to that before the court. There, the remedy only was barred, but the debt existed; it was not the case of an express lien. A man cannot set up his own illegal act to avoid his own deed. *Watts vs. Brooke*, 3 *Ves.* 613. *Denn. vs. Dodds*, 1 *Johns. Cas.* 151. In *Ex parte Skip*, the trustee was said to stand in the place of the bankrupt. It was a bill to be relieved against a usurious contract. The Lord Chancellor does not overthrow the principle, that where the usurer is brought into equity, he is permitted to get his true debt and legal interest.

*Winder*, in reply. Whatever title the defendant had to the books in controversy, arose from the contract. The statute makes void all contracts founded upon usurious considerations. Here money was borrowed on usurious interest, and the books deposited at the time of the loan. The possession arose on this usurious lending of money. It was not upon a legal or equitable right that the defendant held the property. The possession was founded upon an illegal consideration. In *Fitzroy vs. Gwillim*, Lord

*Mansfield* said, that the plaintiff could not recover, because both parties had violated the law. Here both the parties have not violated the law; and therefore, even if his lordship was correct, this case does not come within the principle he laid down. Upon a motion for a new trial his lordship does not adhere to his reason given at *nisi prius.* He resorts to a new principle—that an action of *trover* is an equitable action. This is the only authority which says it is an equitable action. Upon this ground only could his judgment be sanctioned, and if that is erroneous, then the decision falls to the ground. Suppose this had been *replevin,* would it be said to be an equitable action? But it has been said that this is a proceeding *in rem,* and therefore equitable. The contract in this case could create no lien. The deposit was by agreement, which agreement was void, and must come within the statute which makes it *utterly* void, and being so, can create no right. *Chapline vs. Hogmire,* 1 *Harr. & Johns.* 29. There is no case where a court of chancery would enforce the contract, if usurious. The court have always enforced the statute of usury rigorously. Where the party comes forward to be redressed at law against iniquitous proceedings under a positive law, the courts have no discretion, but must give redress. An action of trover is no more an equitable action than an action of debt. The boundaries between a court of equity, and a court of law, must be preserved. Lord *Mansfield* had committed an error, and he could not get rid of it, but by resorting to a new principle. His opinions may be sett off against each other. The plaintiff might have brought a *qui tam* action against the defendant, and made him pay treble the amount, but he forbore to do so. In *Hindle vs. O'Brien,* the court went upon Lord *Mansfield's* decision. But this was overruled in *Roberts vs. Goff.* How far the court had a right to interfere with their own judgment, was with themselves; but when they discovered it to be erroneous, they were right in so declaring it. But the trustee here is not to stand as the insolvent. He comes in to enforce the rights of the creditors of the insolvent. All the legal title of the insolvent passed to the trustee. Are not the creditors innocent purchasers? Suppose the defendant was a legal assignee, without notice to the trustee he might hold until paid. The maxim of *in pari delicto,* &c. is not applicable to the plaintiff. The

1823.

Snowden
vs
Dorsey

obligations on the insolvent to pay do not apply to the trustee who claims under the legal title. The case *Ex parte Skip* is full to the point. Equity will not interfere in the case of assignees of bankrupts, so as to compel them to pay usurious demands. Again, the right to make the defence relied on, is taken away by the answer given by the defendant to the plaintiff's demand for the books. He refused to deliver them unless the whole sum of money was paid. This shows, that if the true sum had been tendered, he would still have refused. Why then have tendered the true sum? He had no right to demand the whole nominal amount loaned. It was insisting upon a condition which he had no right to insist upon; and it was therefore a waiver of the tender.

JUDGMENT AFFIRMED.

SNOWDEN *et al. vs.* DORSEY *et al.*

JUNE.

An appeal will not lie from an interlocutory decree of the court of chancery, by which no question of right between the parties is decided.

APPEAL from an *interlocutory* decree of the court of chancery. The appellees filed their bill for the specific performance of a contract to convey land. The Chancellor, *(Kilty,)* in giving his decree, stated that there was sufficient proof of the contract for a conveyance, and that the bill prayed for an account as a consequence of the right to a conveyance, and a decree therefor; but that he thought proper and necessary to pass an interlocutory decree for an account, in order to ascertain the sum due on either side preparatory to a final decree. He therefore decreed, that the parties account with each other concerning the matter mentioned in the proceedings. and that the auditor should state an account from the evidence already offered, or that might be exhibited to him. From this decree the defendants appealed.

The cause coming on to be argued before BUCHANAN, EARLE, and MARTIN, J.

*T. B. Dorsey,* (Attorney General,) and *Taney,* for the Appellees; moved the court to dismiss the appeal. They referred to the acts of 1721, *ch.* 14, *s.* 4; 1785, *ch.* 72, *s.* 27; and 1818, *ch.* 193, *s.* 1. *Jacob's L. D.* tit. *Decree.* 2 *Harr. Chan.* 331. They admitted that there might be an appeal from an interlocutory decree, where there was some