SAMUEL M. SHOEMAKER *vs.* THE NATIONAL MECHANICS' BANK OF BALTIMORE, CHAS. COLEMAN, Cashier, and ROBERT J. BALDWIN and others, Directors.

*Injunction—Party asking Injunction must make a Primâ facie case—Courts refuse to interfere to disturb Illegal Contracts when Executed—Bank Directors not controlled by Courts, when acting within their Proper sphere.*

The granting or refusing of a writ of injunction is a matter resting in the sound discretion of the Court.

It is the duty of a party making application for an injunction, not only to make a full and candid disclosure of all the facts of his case, but also to produce, if in his power, strong *primâ facie* evidence in support of the averments upon which his alleged equity rests.

A bank advanced to a borrower more money than by law it was allowed to lend, and took therefor collateral securities. A stockholder of the bank filed a bill, alleging that the contract of loan being illegal and void, the bank had acquired no title to the securities, and that the securities were worthless and fraudulent. On a prayer for an injunction based on these allegations, to restrain the bank from misapplying its funds, by prosecuting certain suits to recover the value of the securities, HELD:

1st. That the failure to file copies of the pleadings and proceedings in the suits, as exhibits with the bill, justified the Court in refusing the injunction.

2d. That even if the contract of loan was illegal and void, being an executed contract, the bank had acquired an absolute, or qualified interest in, or title to, the securities.

3d. That the directors of the bank are acting within their proper sphere, when protecting such title or interest by suit or otherwise, and while so acting they cannot be controlled by the Courts.

APPEAL from the Circuit Court of Baltimore City.

The appeal in this case was taken from an order of the Court refusing to grant an injunction. The facts are sufficiently detailed in the opinion of the Court.

Shoemaker *vs.* The National Mechanics' Bank of Baltimore.

The cause was argued before BARTOL, C. J., STEWART, BRENT, GRASON, MILLER and ROBINSON, J.

*J. Dean Smith* and *Joseph H. Bradley, Sr.*, for the appellant.

The loans made by the individual defendants, directors and officers of the bank, being *ultra vires* and in violation of the charter of the bank, were void, and the securities taken therefor were void, and the bank acquired no title to the securities taken for such loans. *Albert and Wife vs. Savings Bank*, 2 *Md.*, 160; *Beach vs. Fulton Bank*, 3 *Wendell*, 583; *Life Ins. Co. vs. Mechanics' Ins. Co.*, 7 *Wendell*, 31; *Mayor, &c., of Balto. vs. B. & O. R. R.*, 21 *Md.*, 50; *Tracey vs. Talmadge*, 4 *Kernan*, 162; *Curtis vs. Leavitt*, 15 *N. Y.*, 239; *President and Directors of Md. Hospital vs. Foreman*, 29 *Md.*, 524.

The complainant, as a stockholder of the bank defendant, is entitled to the injunction, as prayed in his bill, to prevent the defendants, directors and officers of the bank from doing the acts complained of, which were *ultra vires* the charter, and from misapplying the funds of the bank in a manner complained of, which, in fact, amounted to a breach of trust. *Dodge vs. Woolsey*, 18 *Howard*, 331; *Campbell & Voss vs. Poultney & Ellicott*, 6 *G. & J.*, 94.

*Robt. J. Brent* and *I. Nevett Steele*, for the appellees.

The appellant cannot set up the illegality of the loan. It is an executed contract—Bayne has the money, and the bank has the assets. *Harvey vs. Tyler*, 2 *Wall.*, 328.

Even if the stock be spurious and fraudulent, it still is valuable, as entitling the holder to recover damages against the company whose officers issued it. *New Haven and New York Rail Road Company vs. Schuyler*, 34 *New York*, 49–74.

The appellant charged that the bank was prosecuting

or defending eleven suits, of which eight were in Federal Courts and three in the State Courts of Virginia.

He annexed no copies of the pleadings in these cases, and omitted the names of the parties and all description of their purposes and objects. They may involve the entire capital of the bank, and they may be prosecuted by the appellant himself as the adverse party.

This, in connection with his failure to furnish or allege the facts showing the fraudulent character of the stock or of the organization of the rail road company, was fatal. *Union Bank vs. Poultney*, 8 *G. & J.*, 332; *Nusbaum vs. Stein*, 12 *Md.*, 319; *Mahaney vs. Lazier*, 16 *Md.*, 73 ; *Lampheimer vs. Rosenbaum*, 25 *Md.*, 221 ; *Hankey vs. Abrahams*, 29 *Md.*, 590–1.

In support of his allegation that the bank was spending its money in building a rail road bridge, the appellant exhibited the copy of a contract made by Riddle, trustee, with Mr. Clephane, the receiver of the road, appointed by the Supreme Court of the District of Columbia ; and it charged that Mr. Riddle was the secret agent of the bank. But the exhibit showed that even if the bank were a party to the contract, the bank was not building a bridge, but that it was loaning money upon the credit of the road, secured by a pledge of its revenues.

The object to which Mr. Clephane might apply the loan, certainly could not impair the corporate power to loan.

ROBINSON, J., delivered the opinion of the Court.

No principle is better established, than that the granting or refusing of a writ of injunction, is a matter resting in the sound discretion of the Court.

It is the duty of a party making application for it, not only to make a full and candid disclosure of all the facts of his case, but also to produce if in his power, strong

*primâ facie* evidence, in support of the averments, upon which his alleged equity rests.

Thus it has been repeatedly held, that the mere oath of a party to the existence of a debt, of which he holds in his possession the written evidence, but which he fails to produce or to assign a satisfactory reason therefor, will not on an application for an injunction, be regarded as any proof of the debt. *Union Bank vs. Poultney & Jacobs*, 8 *G. & J.*, 332; *Nusbaum vs. Stein*, 12 *Ind.*, 318; *Hankey vs. Abrahams*, 29 *Md.*, 588.

This rule applies with peculiar force to this case. Here the Court is called upon to interfere with the management of the affairs of a corporation, the exclusive control of which is by the charter confided to the officers and directors chosen by the stockholders themselves. And although it is the duty of the Court to interpose to prevent the diversion of the funds and assets to purposes foreign to and inconsistent with the plain and obvious purposes of the charter, yet in such a case to entitle a party to an injunction, the bill and exhibits ought to present a clear and undoubted claim for relief. Otherwise, instead of being a remedial process to promote the ends of justice, it may become the instrument of oppression and irreparable injury.

Has the complainant presented a case coming within these general principles? is the question to be decided on this appeal?

The bill in substance alleges, that the bank defendant was incorporated under the General Currency Act of Congress, approved June 3, 1864, with a capital stock of six hundred thousand dollars; that the 29th section of that act provides,

"That the total liabilities to any association formed under said act, of any person, or company, or of any corporation for money loaned, shall at no time exceed one-tenth part of the capital stock of such association actually

paid in;" that its officers and directors, in violation of said section, constantly and habitually loaned to a certain firm of Bayne & Co., sums largely in excess of said amount, and that in 1866 the said firm became insolvent, owing to the bank on account of said loans, over *three hundred thousand dollars.*

That to secure these loans, Bayne pledged certain collaterals, including 1250 shares of the Washington, Georgetown, and Alexandria Rail Road Company; that said loans being illegal and void, no title or interest in said collaterals passed to the bank.

That notwithstanding these facts, the defendants are expending the money of the bank in conducting sundry suits, involving their pretended title to said stock, and in building or repairing a bridge belonging to said company.

After a prayer for general relief, the complainant further prays that the defendants may be restrained from further prosecuting said suits, or in expending the money of the bank in regard thereto, or in building or repairing said bridge.

Now what proof is offered in support of these *material* and *vital averments?* Do they not rest solely upon the oath of the complainant. No exhibits are filed—not even copies of the pleadings or proceedings, from which the Court might learn the nature and character of the suits, the names of the parties, and the grounds upon which their respective claims are based. What if these exhibits. should disclose the fact that the complainant is a party claiming adversely, in the very suits which he seeks to enjoin, or that the defendants claim title to the stock through other persons than Bayne & Co.

If in the case of *The Union Bank vs. Poultney & Ellicott,* 8 *G. & J.,* 333, the oath of a party as to the existence of a debt was held insufficient to prove the debt, the written evidence of which was in his possession but not produced, so in this case, the failure to file copies of the pleadings or

proceedings as exhibits, in support of the averments in regard to the object and purposes of the suits sought to be enjoined, must be considered a fatal defect. This evidence it was in the power of the complainant to have produced, and without it, or some other proof to satisfy the conscience of the Court of the truth of the facts alleged in the bill, he failed to present a case such as would justify the granting of an injunction.

But waiving all objections to the bill in this behalf, how stands the case upon its merits?

The complainant insists that the loans to Bayne & Co. being illegal, the bank could acquire no title to the collaterals, pledged to secure their payment, and that in maintaining this pretended title by suit, the defendants are misapplying the assets of the bank.

Now so far as this case is concerned, it is unnecessary to decide whether the loans are illegal and void, because of their violation of the 29th section of the Currency Act, or whether it was the purpose of the framers of the law to subject the bank only to the penalty prescribed by the 53d section of said Act.

If we concede that they are illegal and void, without, however, so deciding, it is sufficient to say that the bank is not here invoking the aid of the Court to enforce their payment, nor are Bayne & Co. shielding themselves from liability by any such defence.

On the contrary, the party who sets up their illegality, who denies the title of the bank to the 1250 shares of stock, the par value of which is *one hundred and twenty-five thousand dollars,* and to the other collaterals, the value of which is not stated—who prays the Court to restrain the directors from defending or asserting their title to the same, is himself a stockholder of the bank, defendant.

How, or in what manner it would promote his interest, or that of other stockholders, to deprive this bank of the

only security which it holds for loans amounting to more than one-half of its capital, we must confess it is rather difficult to imagine. Be this, however, as it may, the question is not whether this Court would enforce an illegal contract, but whether being executed, and under it Bayne & Co. having received the money, and the bank being in possession of the securities upon the faith of which the loans were made, it will be held upon the application of the complainant not a party to the contract, that under it the bank acquired no interest in the collaterals, and that in asserting that interest the directors are guilty of a violation and breach of trust?

We take the law to be settled, that although as a general rule, an illegal contract cannot be enforced, yet if executed, and under it a party has paid money, he will not be permitted to recover it back.

In the language of C. J. Wilmot in *Collins vs. Blantern,* 1 *Smith's Leading Cases,* 497:

" Whoever is a party to an unlawful contract, if he hath once paid the money stipulated to be paid in pursuance thereof, he shall not have the help of a Court to fetch it back again."

In other words, if Bayne & Co. had paid the money borrowed under these loans, will it be contended that they could recover it back? Would a Court listen for a moment to such an unjust demand? Or if unable or unwilling to pay the money, could they recover the collaterals pledged by them, and upon the faith of which the loans were made? Would not a Court require them to discharge their honest obligations? to pay the money borrowed? to do what was equitable and just, if they required equity to be meted out to them?

It is well known that, prior to the Act of 1845, usurious contracts were denounced in this State by statutory law, as illegal and void; yet in *Trumbo, Ex. of Neff, vs. Blizzard & Jacobs,* 6 *G. & J.,* 18, it was held that a party seek-

ing to avoid such contracts, could only obtain relief by paying the *principal* and *legal interest.*

The same principle was asserted in *Lucas, Trustee, vs. Latour,* 6 *H. & J.,* 100, where the trustee of an insolvent petitioner brought an action of *trover,* to recover the value of property pledged by the insolvent to secure an usurious loan. In that as in this case, it was pressed in argument, that the loan being illegal and void, the lender could acquire no title or interest in the property pledged as security for its payment. But it was held otherwise, and the trustee failed to recover.

From these cases, and the principles which underlie the decisions, it must follow that neither Bayne & Co., nor their assignees could deprive the bank of these collaterals, without paying the loans to secure which they were pledged. If so, then it must also follow that the bank has an *interest* in or *title* to them, whether absolute or qualified, it is immaterial, and the right of the defendants as directors to protect that interest, whether by suit or otherwise, cannot be questioned. To them, the management of the affairs of the corporation is by the charter confided, and thus acting within the sphere of their authority, they cannot be controlled by this Court.

The case of *Albert and wife vs. Savings Bank,* 2 *Md.,* 160, is not in conflict with these views. There it was held, that a *cestui que trust* could recover property, which his trustee, in violation of the trust, had pledged to secure an illegal loan; but the Court impliedly admit that if the trustee had pledged *his property,* he would have been estopped.

This case is also distinguishable from the *President and Directors of the Maryland Hospital vs. Foreman,* 29 *Md.,* 524. It was decided, in that case, that the plaintiff was entitled to recover, because the contract under which the money had been paid was neither *malum in se,* nor *malum prohibitum,* and the principle *in pari delicto* did not apply.

The objection fatal to the contract, in that case, was the want of power on the part of the corporation to make it. In the language of the Court, it "was simply *ultra vires*, and therefore not binding on the parties."

We are also of opinion, that the complainant is not entitled to an injunction upon the allegation, that the defendants are using the money of the bank in building or repairing the bridge belonging to the company.

The copy of the contract made by Riddle, trustee, with Clephane, receiver of the road, and filed as an exhibit in support of the bill, shows that if the bank had any connection with the contract, it was by loaning money upon the credit of the road.

The purposes to which Clephane might apply the money could not surely impair the corporate power to make the loan. Whether the defendants exercised a wise discretion in making it, or in accepting the security offered, are questions over which we have no control.

For these reasons, the order of the Court below refusing an injunction will be affirmed.

*Order affirmed.*