<table>
<tr><td>5</td><td>373</td></tr>
<tr><td>63</td><td>306</td></tr>
</table>

## Warren *against* Powers and another.

After a plea of performance, a rejoinder of matters in excuse of non-performance, is a departure.

The statute of *May,* 1822, *c.* 12. *s.* 2. does not authorize the defendant to rejoin matters not in pursuance of the plea; its sole object being to give the defendant the same benefit of double pleading, where the breaches first came out in the replication, as he already had, where they were assigned in the declaration.

*New-London,*
July,
1824.

Warren
*v.*
Powers.

Therefore, where the defendant, in an action, brought in the name of the judge of probate, on the penal part of an administrator's bond, pleaded performance generally ; the plaintiff replied, setting forth several breaches, *viz.* in the administrator's not having made and exhibited an inventory within the period specified in the condition of the bond, in his not having rendered his administration account within the time specified for that purpose, and in his not having paid to certain creditors the sums found due to them by the commissioners on the estate of the deceased, which had been represented insolvent ; to which the defendant rejoined sundry matters, in justification or excuse of these omissions ; it was held, that such rejoinder was a departure, and, as such, incurably defective.

Where a covenant is express, there must be an absolute performance ; nor can it be discharged, by any collateral matter whatever.

Where the condition of a bond is not strictly impossible, at the time of making it, nor is afterwards made so, by the act of God, of the law, or of the obligee ; the omission to perform it, is an absolute and unexplainable breach.

Therefore, where the condition of an administrator's bond, was, that he should exhibit an inventory to the court of probate, by the 14th of *June,* 1821, and he did not exhibit it, until the 13th of *August* succeeding ; it was held, that such condition was thereby broken, although the appraisers were not appointed until the 9th of *July,* 1821, and the inventory, when exhibited, was accepted by the court.

So, where the condition of an administrator's bond, was, that he should render his administration account by the 14th of *November,* 1821, and he did not render it until the 21st of *May,* 1823 ; it was held, that such condition was thereby broken ; although the estate was represented insolvent, and commissioners were appointed, on the 13th of *August,* 1821 ; the commissioners made their report, on the 11th of *March,* 1822 ; an order for the sale of real estate was passed on the 11th of *November,* 1822 ; and the administrator's return of his doings under this order, was made and accepted, on the 13th of *January,* 1823 ; and although such account, when rendered, was accepted by the court.

The non-payment, by the administrator, of the debts of creditors, which have been ascertained, by commissioners, is a breach of the condition of his bond.

In such case, no special demand, by the creditors, previous to the commencement of a suit on the bond, is necessary.

In such case, the rule of damages will be the average, to which the creditors, for whose benefit the suit is brought, are entitled.

This was an action on a bond, in the penal sum of 10,000 dollars, executed, by the defendants, to the plaintiff, as judge of probate, on the 14th of *May,* 1821.   The action was commenced on the 30th of *October,* 1822.   The condition shewn on oyer, and recited in the plea of the defendants, was, in the form prescribed by statute, for the faithful performance, by *James Powers,* of the duty of administrator of the estate of *Joshua Powers,* deceased.   The defendants pleaded performance generally.

The plaintiff replied, setting forth the following breaches : 1st, That said *James* did not make, or cause to be made, a true and perfect inventory of all the goods, chattels, credits and es-

tate of the said deceased, which came to the possession or knowledge of the said *James*, as administrator as aforesaid, and the same exhibit, or cause to be exhibited, into the registry of the said court of probate, at or before the 14th day of *June*, 1821 : 2ndly, That said *James* did not make, or cause to be made, and exhibited to said court of probate, a true and just account of his said administration, at or before the 14th day of *November*, 1821 : 3rdly, That said estate, which came to the possession and knowledge of the said *James*, amounted to a large sum, *viz.* to the sum of 3812 dollars, 19 cents, which the said *James* received long prior to the date and service of the plaintiff's writ ; that said estate was represented insolvent, commissioners duly appointed, and the term of six months limited, by said court of probate, for the creditors to said estate to exhibit their respective claims ; that *Joseph Smith* 2nd, *Eunice Lee* and *Christopher Comstock* were creditors of said estate, and within the time limited by said court, exhibited their respective claims to said commissioners, and said commissioners made their report to the said court of probate, on the 9th day of *April*, 1822, in which said commissioners found and reported that there was due from said deceased to said *Joseph Smith* 2nd the sum of 314 dollars, 14 cents, to said *Eunice Lee* the sum of 84 dollars, 9 cents, and to said *Christopher Comstock* the sum of 349 dollars, 75 cents; and that said *James*, neglecting his duty as administrator, hath never paid said several creditors the sums due to them respectively, nor to either of them, nor any part thereof, but said sums are now due and unpaid.

The rejoinder of the defendants averred, 1st, That said administrator did make, or cause to be made, a true and perfect inventory of all the goods, chattels and credits and estate of said deceased, on the 13th of *August*, 1821, which inventory was appraised by *William L. Payan* and *Simeon Smith*, freeholders appointed by said court, on the 9th of *July*, 1821, and being so made and exhibited, was, by said court, on said 13th of *August*, accepted, and ordered to be recorded : 2ndly, That on the 13th of *August*, 1821, said estate was duly represented insolvent, and commissioners thereon were duly appointed, after notice given to the creditors ; which commissioners, on the 11th of *March*, 1822, made their report to said court, which was accepted by said court ; and on the second *Monday* of *March*, 1822, said court passed an order to sell the personal estate of said deceased, and on the 11th of *November*, 1822, a like order to sell the real estate ; which orders were duly com-

*New-London,*
July,
1824.

Warren
*v.*
Powers.

plied with, by said administrator, on the 13th of *January*, 1823, when he made return of his doings under said orders to said court, when the same was accepted by said court; and on the 21st of *May*, 1823, said administrator made out a true and just account, as administrator, and exhibited the same to said court, which was accepted and allowed : 3rdly, That after said accounts were so allowed on said estate, *viz.* on the 21st of *May*, 1823, it appearing, that said estate was in fact insolvent, said court struck the average thereon, and ordered said administrator to pay to the several creditors, who had proved their debts, the sum of 51 cents on the dollar on their respective claims ; all which creditors have been duly paid or satisfied their respective demands, except said *Joseph Smith* 2nd, and *Eunice Lee*, who have never demanded the same of said administrator : 4thly, That the said administrator hath in all things, complied with and fulfilled the condition of said bond, as the law requires.

To this rejoinder the plaintiff demurred ; and the court adjudged it to be sufficient, and rendered judgment for the defendants. To reverse that judgment, the present writ of error was brought.

*Isham* and *Waite*, for the plaintiff in error, contended, 1. That the rejoinder of the defendants was a *departure* from their plea, and was, therefore, bad. First, it was a departure at common law ; being a matter *in excuse* of performance. 1 *Chitt. Plead.* 621. *Harding* v *Holmes*, 1 *Wils.* 122. 2 *Wms. Saund.* 84. *c.* Secondly, it was equally a departure, under the statute of *May*, 1822, *sect* 2. That statute authorizes the defendant to rejoin several matters by distinct rejoinders ; but it does not authorize him to rejoin matters not pursuant to his plea.

2. That the matters alleged by the defendants, in excuse of the breaches assigned by the plaintiff, were in themselves insufficient.

The first breach is, that the administrator did not make and exhibit an inventory of all the estate of the deceased, by the 14th of *June*, 1821. What is the excuse for this breach ? That he made and exhibited such inventory *afterwards*, which was accepted by the court of probate. This, in a court of law, is no excuse for the non-performance of an express stipulation. The *acceptance* by the court was no waiver of the breach ; as it was a matter of course to receive the inventory, when it was returned. It may be said, that it was *impossible* for the admin-

istrator to return the inventory, on the 14th of *June*, because no appraisers were appointed until after that time, *viz.* on the 9th of *July*  But it was the sole fault of the administrator, that appraisers were not sooner appointed.  He ought to have applied for, and obtained, their appointment.  The judge never appoints appraisers, except upon the application of the executor or administrator.  An impossibility resulting from the default of the party charged, is obviously no excuse.  Nor would it be, even if no negligence or misconduct were imputable to him; as he has bound himself to perform, at all events.

The second breach is, that the administrator did not exhibit his administration account, by the 14th of *November*, 1821. How is this excused? By stating the proceedings, which took place, after the estate was represented insolvent.  This rests upon the same ground as the excuse for the first breach.  The several orders of the court of probate were to be obtained only on the application of the administrator; and if an extension of the time for rendering his account became necessary, he should have applied for such extension.

The third breach, which was the principal inducement for commencing the action, is, that the administrator had neglected to pay certain creditors.  That this, if not excused, is a breach, was decided in *Cony* v. *Williams*, 9 *Mass. Rep.* 114. See also *The Archbishop of Canterbury* v. *House, Cowp.* 140. With regard to two of the three creditors named in the replication, no excuse is offered, except that they had not made demand.  But no demand was necessary; for the debts had been ascertained, and were due; and this was well known to the administrator.

3. That the rule of damages must be the amount due to the creditors for whose benefit the suit is brought.  *Pierce* v. *Whittemore*, admr. 8 *Mass. Rep.* 282.

*Law* and *Brainard*, for the defendants, contended, 1.  That the rejoinder was not exceptionable as being a departure.  In the first place, the matters stated in the rejoinder, if they constitute a defence in any form, are equivalent to performance, and support the plea.  Secondly, if the rejoinder were bad at common law, still it is good under the statute of *May* 1822. The object of that statute was to place a rejoinder to breaches assigned in the replication, precisely upon the footing of a plea to breaches set out in the declaration.  Now, if the plaintiff had assigned these breaches in the declaration, would not a plea

*New-London,*
July,
1824.

Warren
*v.*
Powers.

alleging the matters contained in this rejoinder, be good in point of form ?   The statute explicitly authorizes the defendant first to plead performance, and then, after having so pleaded, to rejoin as many several matters as he might have pleaded, had the condition and the breaches thereof been set forth in the declaration.   In such case, the defendant, by force of the statute, is authorized to plead in the same manner as though he had not before pleaded.   There can be no such thing as a departure; because the defendant is under no obligation to support the plea.   If this be not the construction of the statute, its provisions are of little use.

2. That the breaches assigned were sufficiently answered, by the matters alleged in the rejoinder.

As to the first breach.   First, the condition, so far as it required the exhibition of an inventory by the 14th of *June*, 1821, which was one month only after the date of the bond, was illegal and void; as the law allows the administrator *two* months to do this duty in.   *Stat.* 202. *tit.* 32. *s.* 14.   Secondly, the exhibition of an inventory by the 14th of *June*, 1821, was rendered *impossible*, by the act or default of the judge of probate, the plaintiff in this action; as he did not appoint appraisers until the 9th of *July*, 1821.   Without the appointment of appraisers, the inventory could not legally be made.   *Stat.* 202. *tit.* 32. *s.* 12.   The administrator is the *agent* of the judge of probate, and ought not to be entrapped, but is entitled to protection in the honest discharge of his duty.   Thirdly, the judge of probate *accepted* the inventory exhibited on the 13th of *August*, 1821.   By this act, he declared himself satisfied with the performance of the condition in this respect, waiving a stricter performance.

As to the second breach.   First, the performance of the condition alleged to be thus broken, was impossible.   Every executor or administrator has a right to represent the estate insolvent.   If he does, the judge must allow one month for the creditors to be heard on the appointment of commissioners; and then, the shortest time that is to be allowed for the creditors to bring in their claims, is six months; making in the whole, at least seven months.   The administrator, therefore, could not settle his administration account within six months.   *Ad vana seu impossibilia lex neminem cogit.*   Secondly, the administrator could not render his final account until after the order of sale; and the order of sale was not made until after the time, when, it is claimed, the account should have been rendered.   In

addition to this, the order of sale is the act of the judge, the plaintiff in this suit, Surely he has no right to complain. Thirdly, the account rendered was *accepted* by the judge; and all the orders made by the judge, in relation to the settlement of this estate, were duly complied with, by the administrator.

As to the third breach. In the first place, the plaintiff has stated no facts, from which it appears, that the defendant, at the commencement of this action, was bound to pay these creditors. No average was struck, until many months afterwards; and even the order of sale was not made until a month afterwards. The administrator, then, had no rule of payment. He not only had no money to pay with, but he did not know how much to pay. Secondly, there has been no demand made of the administrator. It is not his duty to go round to the creditors, and pay them, before they call for their money.

Hosmer, Ch. J. The plaintiff has brought an action, as judge of probate, on the penal part of a bond. Having prayed oyer of the condition, and having recited it, the defendants pleaded performance. To this the plaintiff has replied, setting forth a number of breaches, *viz.* in the administrator's not having made and exhibited an inventory within the period specified in the condition of the bond, nor a true and just account of his administration; and in not having paid to certain creditors the sums found due to them, by the commissioners on the estate of the deceased, which had been represented insolvent. To the replication the defendants, abandoning their plea entirely, have rejoined; and after having distinctly admitted, that the inventory was not made and exhibited, nor the administration account, and that the debts were not paid, all as the plaintiff had alleged, they attempt to show a justification of these omissions. A more gross and palpable departure from the plea, it is not possible to conceive. "A departure in pleading, is said to be, when a party quits or departs from the case or defence, which he has first made, and has recourse to another; it is when his replication or rejoinder contains matter not pursuant to the declaration or plea, and which does not support or fortify it. A departure in pleading is not allowed, because the record would, by such means, be spun into endless prolixity; for, if it were permitted, he who has departed from and relinquished his first plea, might, in every stage of the cause, resort to a second, third, or even further defence, and thereby pleading would become infinite; and if parties were permitted to wander

from fact to fact, forsaking one to set up another, no issue could be joined, nor could there be any termination of the suit." 1 *Chitt. Plead.* 618. 619. *Richards* & al. v. *Hodges,* 2 *Saunders* 84. *a.* n. 1. It would be extraordinary to admit, that the defendants may plead performance, and afterwards rejoin that they did not perform for sufficient reasons; thus, in the same case, saying *yes* and *no* to the same point of controversy.

Still, it has been contended, that a statute passed by the legislature, in *May,* 1822, has authorized this mode of pleading.

This law has enacted, " that in any action on note, bond or other contract, to which there is a condition annexed, which condition, and any breach or breaches thereof, are not set out in the plaintiff's declaration; and the defendant having prayed oyer of, and set out such conditions, pleads performance thereof, and the plaintiff replies thereto, setting forth any breach or breaches of such condition, the defendant may, *with leave of court,* rejoin as many several matters, *by distinct rejoinders,* as he might have pleaded, had such condition, and breach or breaches thereof, been set forth in the declaration." The meaning of this law, having regard to the expression and subject matter of it, is extremely perspicuous. By the 31st section of the statute for the regulation of civil actions, p. 43. it is made " lawful for the defendant in any suit, to plead, *by special leave of court,* as many several matters by distinct pleas, as he shall think necessary for his defence." This act, and the one relied on by the defendants, are expressed, in all essential particulars, precisely in the same phraseology; and, beyond question, had the same object. The words " *several matters by distinct rejoinders, with leave of the court,*" in the late law, are almost a transcript of the expression in the former act, " *by special leave of the court, as many several matters in distinct pleas;*" and it is impossible to doubt, that this act was before the draftsman of the bill, by the defendants relied upon, when he drew it, and in the contemplation of the legislature when they passed it. By authorising distinct rejoinders, when the breaches first came out in the replication, it was intended to give the defendant the same benefit of double pleading, as before was imparted, when the breaches are stated in the declaration; and this is the whole scope and object of the law. But to empower a person to set up one defence, and then admit the falsity of it, and depart to another, is an absurdity too gross to ascribe to the legislature, unless both the words and object of the law imperiously require such construction.

If the absurdity were admitted, it would not aid the defendants.    They have rejoined *without leave of the court* ; but the statute authorises the novel pleading only "*with leave of the court.*"    Their rejoinder is single and inseparable ; but the law sanctions only "*several matters in distinct rejoinders.*"

I conclude, on this head, that the defendants' rejoinder is incurably defective, the facts not having been legally put on the record ; and they are not admitted by the demurrer, which concedes nothing that is not well pleaded.    The replication, then, is unanswered ; and the breaches of the condition of the bond, are palpable.

This settles the controversy in the plaintiff's favour ; but as there is a difference of opinion on this point, I will briefly attend to the other questions made in the case.

Where a covenant is express, there must be an absolute performance ; nor can it be discharged, by any collateral matter whatever.    If a person, for example, covenant to pay rent for a house, at a specified time, and the premises are burnt down, so that he had no enjoyment for the whole time claimed, he is bound to make payment; for the covenant was absolute.    *Monk v. Cooper, 2 Strange* 763.    And where the master of a ship, by charter-party, covenanted to be at *Carolina*, by a certain time, *though it appeared that it was impossible* he could be there at the time, by reason of storms and other causes ; yet it was held, that he was bound to go, at all events, and was liable on the covenant.    *Shubrick* v. *Salmon*, 3 *Burr.* 1637.    Contracts implied by operation of law, admit of a more benign construction, and are moulded according to the dictates of reason and justice ; but express covenants are strictly construed ; and the person covenanting not only assumes to do the matter stipulated, but takes on himself the risk of performance.    *Chesterfield* v. *Bolton, Comyns' Rep.* 627.    *Jeakill* v. *Linne, Hetley* 54.    *Paradine* v. *Jane, Aleyn* 26.

If the condition of a bond be possible, at the time of making it, and *afterwards it becomes impossible, by the act of God, of the law, or of the obligee,* there the penalty of the obligation is saved.    *Co. Litt.* 206.    2 *Black. Comm* 340.    But where the act stipulated is not strictly impossible, nor made so, in either manner beforementioned, the omission to perform it, is an absolute and unexplainable breach of the contract.    To apply these principles.    The inventory, in the case before us, the defendant covenanted that the administrator should make and exhibit, on the 14th *June*, 1821 ; but it was not made and ex-

hibited until the 13th of *August* succeeding; and hence, the penalty of the bond in question was thereby forfeited.

It has been contended, that the condition of the bond was illegal; and that the non-performance was waived; but on no legal foundation. The inventory was to be made and exhibited in thirty days from the date of the bond; whereas as it is now said by the defendants, the court of probate, by the 4th section of the law concerning the settlement of estates, ( *p.* 263. ed. 1808.) was prohibited from exacting an exhibition of the inventory until two months had elapsed. By the first section of the act above-mentioned, the only one bearing on the point in question, there is no limitation; and the 4th section alluded to, has no relevancy to the matter under discussion. It subjects the executor of the last will and testament *to a penalty*, if he do not cause the inventory to be made and exhibited within two months after the probate of the will. The object of this section, however, is not to limit the judge of probate, but to coerce, by punishment, the performance of a trust. That the executor is subjected to a certain duty, at the precise time of the penalty's accruing, the law does not intimate; but it does provide, and this is the whole scope of it, that if he omit performance of the trust, more than two months, he shall be punished.

It has been said, that a literal compliance with the condition of the bond, was a legal impossibility, inasmuch as the freeholders for appraisement of the articles inventoried were to be appointed by the court of probate only; and that this appointment was not made until after the time limited for the exhibition of the inventory had expired. Now, if the course was to appoint the appraisers, why was not this necessary act done? The only answer is, it was not requested by the administrator; so that the objection is founded on his neglect. But the law has been misconceived. The statute, at the date of the defendants' bond, and for more than half a year thereafter, empowered the administrator to take two or more disinterested neighbours and friends to the deceased, to appraise the articles inventoried. *P.* 262. ed. 1808. It was confided to him personally; and no act of the court was necessary.

It has been insisted, that the acceptance of the inventory, by the judge, at a day future to the time, when, by the condition of the bond, it should have been exhibited, was a waiver of the antecedent breach of contract. Whether a waiver or not, must depend on the intention of the party, or the operation of law. There was no *express* intention to waive; and had there

been, it would have availed nothing; for a contract broken, al-
though it may be released, cannot be waived. 1 *Pow. on Cont.*
416. As little foundation is there to *imply* a waiver. If any

thing, it was a waiver by operation of law; and predicated on
what? Merely, on the performance of an act, by the judge,
compulsory upon him, and his indispensible duty. whether the
inventory was, or was not, exhibited within the time contract-
ed. Most clearly, the act of the judge had no reference to, or
operation upon, the bond, unconnected, as it was, with the
subject before him, and out of sight.

The condition of the bond, then, was broken, by the non-ex-
hibition of the inventory within the time stipulated. It is not
necessary to pursue the subject further. The penalty of the
bond is incurred, by the defendants; and the sum recoverable in
equity, must be the measure of the judgment. At the same
time, I cannot omit remarking, that the condition of the bond
has not been performed, in other essential particulars. The
administration account was not exhibited within the period pro-
vided by the contract; nor were the debts allowed by the com-
missioners, paid to the creditors pursuant to the administrator's
duty. After the representation of the estate insolvent, he
should have obtained a decree of court, postponing the period
for the exhibition of his account; and thus his bond would
have been saved. As to the non-payment of the debts, no spe-
cial demand by the creditors was necessary. There was resting
on the administrator a precedent debt or duty; and the thing
to be done, was within his peculiar knowledge. In either of
these cases, a request is not legally requisite to sustain the suit.
1 *Chitt. Plead.* 322. 323. 2 *Inst.* 66. 126. *Selman* v. *King*
& al. *Cro. Jac.* 183. *Henning's* case, *Cro. Jac.* 432.

In addition to the preceding observations, it may not be use-
less to observe, that the causeless delay of the administrator,
for a number of months, to obtain an order of sale, after the
acceptance of the report of the commissioners, was a mal-ad-
ministration, and violated the condition of the defendants'
bond. The non-payment of a debt, after it has been ascer-
tained by a judgment of court, or by commissioners, is a breach
of the condition of an administration bond, as an unfaithful ad-
ministration; (*Cony* & al. v. *Williams* & al. 9 *Mass. Rep.* 114.)
and the neglect of the administrator to procure the necessary
acts of probate, so far from being an excuse, is a breach of
trust.

The sum recoverable must conform to the average allowed on the commissioners' report.

PETERS, J. was of the same opinion.

BRAINARD and BRISTOL, Js. dissented on the point of departure; but on the other points, they concurred with the Chief Justice.

Judgment reversed.