JOSEPH DUNCAN *vs.* THE MARYLAND SAVINGS INSTITUTION. *December* 1838.

A charter conferring on a *Savings Institution* the power to invest deposits made with it in public stocks, or *other securities*, authorises the lending upon bills, bonds, notes, and mortgages, as well as stocks, and also the power of making loans by way of discount.

The incorporation of Savings or other institutions in the city or precincts of *Baltimore*, with authority to receive deposits and discount paper, is no violation of the pledge of the State given to the *Banks of Baltimore*, by the act of 1813, ch. 122, and 1831, ch. 131; the true interpretation of that engagement being, that no charter of incorporation should be granted within those limits during the specified period, with power to issue negotiable notes.

There is nothing in the charter of the *Maryland Savings Institution* which requires two securities to be taken for money lent, nor is it an objection to

Duncan *vs.* Maryland Savings Institution.—1838.

a note discounted there, that it is not negotiable. A promissory note in which the negotiable words are omitted, is within the Statute of *Ann*, and on it three days of grace are allowed according to mercantile usage.

It is not usurious in a *bank* to receive interest in advance upon notes discounted by it, and by the act of 1832, ch. 152, all other corporate bodies, and all citizens and residents of this State, are placed in this respect upon the same footing with the banks.

Usury does not consist in merely intentionally taking a larger amount of interest than is allowed by law, but there must be superadded to such intent, a corrupt design to charge more than the legal rate,—and that is a matter of fact to be submitted to the jury.

But the court did right in withholding the question from the jury, where the amount charged was only two cents more than the legal rate of interest, that circumstance standing alone being too trifling and inconclusive to warrant the jury in finding a corrupt and usurious intention.

APPEAL from *Baltimore* county court.

This was an action of *assumpsit,* brought on the 22nd August 1834, by the *Maryland Savings Institution* against *Joseph Duncan.* Issue was joined on the plea of *non assumpsit.*

*1st Exception.* The plaintiffs to support the issue on their part offered in evidence the charter granted them by the *General Assembly of Maryland,* with the bye laws which they had enacted under the same, and also the supplement thereto, and the following promissory note, admitted to have been made and delivered to them by the defendant, viz:

"*Baltimore,* July 3rd 1833.

"Six months after date I promise to pay *the Maryland Savings Institution* one hundred and fifty dollars for value received, for the prompt payment of which sum I hereby pledge 16 shares of stock standing in my name on the books of said institution.                              *Joseph Duncan.*"

$150.

The defendant then proved that, the said note was made and delivered by him to the plaintiffs, to obtain thereon from them, the loan of the sum of money expressed upon its face for the period of time therein mentioned, and that the plaintiffs did, on the day of the date of said note, make a loan thereon to him of the said sum for that period, and for interest upon said loan did deduct from the face of said note, on the day on

which said loan was made, the sum of $4.60, which was admitted, for the purposes of this prayer, to be the interest legally chargeable at the expiration of six months, and three days of grace for the forbearance of one hundred and fifty dollars for that length of time. And thereupon the defendant prayed the court to instruct the jury, that although they may believe that, he made and delivered to the plaintiffs the promissory note which they have given in evidence, yet if they shall also believe the facts offered in evidence by him, and shall further believe that, the plaintiffs did intentionally exact and take from the defendant, upon the day on which said money was loaned, the sum of four dollars and sixty cents, as and for interest upon the sum so loaned them, that the plaintiffs are not entitled to recover, because such exaction and taking of interest in advance, upon the loan of money on a note *not* negotiable, was corrupt and usurious, and avoids the contract of loan, which instruction the court [MAGRUDER and PURVIANCE, A. J.,] refused; but directed the jury, that the said exaction and taking of interest was not usurious. To which refusal the defendant excepted.

*2nd Exception.* The plaintiffs having offered the evidence already given in the first exception, the defendant in addition to the evidence already given by him in said exception proved by *Rowlett's* interest tables, that the interest of one hundred and fifty dollars for six months and three days, the time contained in said note, was four dollars and fifty-eight cents.

And thereupon, the defendant prayed the court to instruct the jury that, although they may believe that, the defendant made and delivered to the plaintiffs the promissory note, which they have given in evidence, yet, if they shall also believe the facts offered in evidence by him, and shall further believe that, the plaintiffs did intentionally exact and take from the defendant, the sum of four dollars and sixty cents, as and for interest upon the sum so loaned by them, then that the plaintiffs are not entitled to recover, because such exaction and taking of said sum for interest, was corrupt and usurious, and avoids the contract of loan. The court refused the instruction,

and directed the jury, that the said exaction and taking of interest, was not in itself usurious.    The defendant excepted.

*3rd Exception.*    The plaintiffs having offered the evidence already given in the foregoing bills of exception, the defendant proved that, the said note was a renewal of one dated the 3rd October 1831, and payable 60 days after date for $150, which was made and delivered by him to the plaintiffs, and which was in the words and figures following to wit:

"$150.00.                              *Baltimore, 3rd October* 1831.

Sixty days after date I promise to pay to the *Maryland Savings Institution* one hundred and fifty dollars, for value received.                              *Joseph Duncan.*"

And further offered in evidence that, the said note of the 3rd of October 1831, was made and delivered by him to the plaintiffs, to obtain thereon a loan of the sum of money expressed upon its face for the period of time therein mentioned, and that said loan was on the 4th October 1831 granted to defendant by the plaintiffs, and that for interest upon said loan the said plaintiffs did deduct from the face of said note, on the day on which said loan was made, the sum of one dollar and sixty cents, and further offered in evidence by *Rowlett's* interest tables, that the interest of one hundred and fifty dollars, from the 4th October 1831 to the 5th December 1831, reckoning both days inclusive, was one dollar and fifty-eight cents.

. And thereupon the defendant prayed the court to instruct the jury, that although they may believe he made and delivered to the plaintiffs the promissory note which they have given in evidence, yet, if they also believe the facts offered in evidence by him, and shall further believe that, the plaintiffs did intentionally exact and take from the defendant the sum of one dollar and sixty cents, as and for interest upon the sum so loaned by them, then that the plaintiffs are not entitled to recover, because such exaction and taking was corrupt and usurious, and avoids the contract of loan.    The court refused the instructions, but directed the jury, that such exaction and taking of interest, was not usurious.    The defendant excepted.

*4th Exception.*    The plaintiffs having offered the evidence

already given by them in the foregoing exceptions, the defendant proved, that the said note was so made and delivered, with a view to have the same discounted by the plaintiffs, and that the plaintiffs did discount it for the defendant; thereupon the defendant prayed the court to instruct the jury, that if they believe the above facts, then, although they may believe that the defendant made and delivered to the plaintiffs the promissory note which they have given in evidence, that the plaintiffs are not entitled to recover, because their charter prohibits their discounting promissory notes; but the court by consent of counsel refused *pro forma* to give the instruction, and directed the jury, by consent of counsel and *pro forma*, that the plaintiffs had power to invest their funds, and as a mode of investment, were authorised to discount promissory notes by their charter. The defendant excepted.

*5th Exception.* The plaintiffs offered the evidence on their part stated in the foregoing bills of exceptions; whereupon the defendant proved that, the said note was made and delivered to the plaintiffs with intent to obtain from the plaintiffs a loan of the money therein expressed, upon a pledge of sixteen shares of their own stock standing upon their books in the name of the defendant, and that the plaintiffs did make said loan accordingly; and thereupon the defendant prayed the court to instruct the jury, that although they may believe that, the defendant made and delivered to the plaintiffs the promissory note which they have given in evidence, yet, if they shall also believe the evidence offered by the defendant in this bill of exceptions, then that the plaintiffs are not entitled to recover, because their charter does not authorise them to loan upon a pledge of their own stock. The court refused the instruction; and directed the jury, that the plaintiffs had such authority. The defendant excepted, and the verdict and judgment being against him, he brought the present appeal.

The cause was argued before BUCHANAN, C. J., STEPHEN, DORSEY, CHAMBERS, and SPENCE, J.

*J. Mason Campbell* for the appellant.

All the bills except the fourth show, that the defendant's prayers were rejected, and in that one it appears that the direction he asked for was refused by consent.

The 1st, 2nd, and 3rd prayers raise questions on the usury laws. The 4th and 5th present points, as to the corporate powers of the plaintiffs.

In proceeding to discuss the exceptions, I cannot refrain from premising, that I fear (an apprehension warranted by the past) of some attempt to prejudice my client in the eyes of the court, grounded on the character of his defences. Let a single sentence be my answer. I never would have taken those defences except in support of merits otherwise defenceless; and should the reply be, that my assertion is no proof, the court will take notice that it is opposed only to a counter assertion of demerits; the record being studiously barred of every *fact* except those absolutely necessary to a legal decision.

The first three questions, are questions of usury, and as preliminary to their presentation, it is proper that I should say, such a defence is admissible under the general issue. *Fulton Bank vs. Stafford*, 2 *Wendell*, 486, and the cases there cited.

The first exception raises the point—Whether it is not usury to take interest in advance on the discounting of a note *not negotiable.*?

The facts show that the discount was taken in advance, and that the note was *not* negotiable.

The authorities indisputably support the affirmative.—*New York Firemen's Insurance Company vs. Ely*, 2 *Cow.* 703, 704. *Bank of Utica vs. Wagner*, 2 *Cowen*, 769. *Utica Insurance Company vs. Bloodgood*, 4 *Wendell*, 655. *Thornton vs. Bank of Washington*, 3 *Peters*, 40. *State Bank vs. Hunter*, 1 *Deveroux*, 100.

From all these cases it appears, that the taking of interest in advance is against the statute, and only protected where the character of the paper discounted is negotiable; the circulation and convertibility of such paper being important to trade. There is no denying here, that the note was not negotiable;

nay more, that it was the obvious intent of both parties it should not be, is clear from the face of the instrument.

It was said before, I think, that the acts of 1826, ch. 99, and 1832, ch. 152, legalizing *Rowlett's Interest Tables,* allow discounting in all cases. But the court is aware that those tables have nothing to do necessarily with the period at which interest is to be paid. They furnish a rule of *calculation* and nothing more, being framed upon the supposition that the year has an even number of days.

The second exception raises the point—Whether it is not usury, or rather, whether the taking of more than legal interest is not *per se,* in the absence of any evidence to the contrary. Evidence of a corrupt and usurious taking.

By the evidence it appeared $4.58 was the legal interest, and that $4.60 were exacted, and no proof explains for the plaintiff the cause of the excess. *Prima facie* evidence is *conclusive* if there be nothing to oppose it. *New York Firemen's Insurance Company vs. Ely,* 2 *Cowen,* 705. *Duvall vs. Farmer's Bank of Maryland,* 7 *Gill & John.* 60, 61.

The third exception shews that the note sued on is a renewal of one, tainted, upon the authorities just cited, with usury, and presents the simple question, whether a contract usurious in its inception, is not equally bad in its continuation.

This exception calls for no observations.

The fourth exception presents the question—Whether the *Maryland Savings Institution* had by its charter the right to discount promissory notes.

I understand it to be already decided by this court, that a contract beyond the scope of a charter cannot be enforced. If the decision however had not been made, I refer to *Fairtitle vs. Gilbert,* 2 *Du. & E.* 871. *New York Firemen's Insurance Company vs. Ely,* 5 *Connecticut,* 564. *Same vs. Bennet,* 5 *Cowen,* 574. *Same vs. Ely,* 2 *Cowen,* 709. *North River Ins. Co. vs. Lawrence,* 3 *Wendell,* 482. *Life and Fire Ins. Co. vs. Mechanics' Fire Ins. Co.* 31.

Now the 6th section of the charter forbids the assumption

under it of any *banking powers*,—those powers having been exclusively granted to other institutions in *Baltimore.*

Is the power, then, to discount promissory notes a banking power?

Undoubtedly. 15 *John.* 390. *The People vs. Bartow*, 6 *Cowen*, 294. *Same vs. Manhattan Co.* 9 *Wendell*, 383. 5 *Connecticut*, 564.

If then, in discounting promissory notes, this institution was assuming powers forbidden it, will the court sustain it in violation of law?

The fifth exception raises the question—Whether the *Maryland Savings Institution* had the right to invest its monies in a loan on its own stock?

The 4th section of the charter authorises an investment in public stocks or other securities, at the discretion of the directors, and in the manner deemed most safe and beneficial.

Now, if the discretion of the directors is without limit, there is an end of the point. But I apprehend that, looking to the purpose apparent on the charter's face—that of making this institution a mere *corporate trustee,* the court will set some bounds to its discretion. *In Trafford vs. Boehm*, 2 *Atkyns* 444, where trustees were empowered to invest monies "in government funds or other *good* securities," *Lord Hardwicke* decided that the authority was not unlimited.

Is it not too clear for argument, that it was the intent of this charter to give the depositor two securities.—The one, that of the institution itself, and the other, that of an investment to be made by the institution elsewhere? The deposites, while in the stock of the institution, are owing by nobody but itself. It still has them, and they cannot be said to be invested, till they are in some third hand, who thereby becomes a debtor to the institution, and as such is an additional security to the depositor.

*D. Stewart* for the appellees.

Upon the question that this corporation had the power to invest, and also to invest in the species of paper discounted,

cited 6 *Term. Rep.* 123. 2 *Ld. Ray.* 1545. 15 *J. Rep.* 392. 3 *Wendell,* 296. *Ib.* 301. *Ib.* 583.

Upon the question that this transaction, nor the facts admitted by the prayers sought, did not constitute a case of usury. *Act of* 1826, *ch.* 99. *Act of* 1832, *ch.* 153. 3 *Peters' S. C. Rep.* 40. 9 *Ib.* 378. 7 *Gill & John.* 60, 61.

That if a case of usury existed, the debt was still recoverable on the money counts.—4 *D. & E.* 564. 3 *Wendell,* 296. *Ib.* 302. 19 *John. R.* 7. 8 *Cowen,* 20.

*C. F. Mayer* also for the appellees.

The error of calculation might be evidence of a corrupt agreement, but it is not corruption per se. Usury depends on intention. 12 *Pick.* 588. 3 *Gill & John.* 123. *Duvall vs. Farmers' Bank of Maryland,* 7 *Gill & John.* 60, 61. 9 *Peter.* 400.—An agreement intended to violate the statute must be found.

But I contend the error is not even evidence of usury. 4 *Wendell,* 655. 2 *Cowan,* 664. 15 *J. R.* 168.

Taking interest in advance is not usurious. 8 *Cowan,* 20. 8 *Wheat.* 353. 3 *Pet.* 40. *Cowper,* 115.

As to the right of recovery on the common counts under the circumstances, as for a loan. 2 *Cow.* 664. 4 *Wendell,* 655.

The power to lend money, is an authority to invest. 5 *Connec.* 571. 9 *Wendell,* 383.

As to the charter of this institution violating the faith of the State plighted to the banks in the city of *Baltimore,* it is alone competent to those banks to complain. If they submit, no one else is to be heard on that head; but they are not injured unless the three great powers of a bank are conferred here,—creating money, receiving and discounting. 15 *John.* 390. 9 *Wendell,* 383. 2 *Cowan,* 700.

DORSEY, J., delivered the opinion of the court.

Of the numerous questions which have been raised in this case, that which, in its proper order, first presents itself for determination, is, whether the *Maryland Savings Institution* has

the power of lending any portion of its deposites, or of discounting therewith, promissory notes or other securities for debt.

As a corporation possessing no powers but those expressly or impliedly conferred on it by the enactment which brought it into being, to the terms of such enactment must we look for the outline of its powers.

The first section of the act authorises the institution to make all contracts whatsoever.

The third empowers the directors to provide for the investment of the funds of the corporation.

The fourth section under which deposites are received provides that, all monies so received shall be invested in public stocks or other secureties at the discretion of the directors.

In incorporating this company it was not the design of the legislature to create a mere stock jobbing institution, the funds of which were to be kept employed in buying and selling stocks which, from the nature of business in receiving and paying off deposites, must have been the case, if all funds were exclusively appropriated to the purchase of stocks. Its charter therefore gave to the directors a discretionary power, to make investments in stocks or other securities.

What is the nature of the security here alluded to? "any thing given or deposited to secure the payment of a debt." The words, "other securities," therefore, embrace bills, bonds, notes, mortgages, &c., and the authority to make investments therein, clothes the institution with the power of making loans by way of discount. The concluding proviso to this section of the act of assembly, "that no part of the funds of said corporation, shall be loaned to any officer or director of said corporation," demonstrates the existence of the power we have ascribed to it. *The People vs. The Utica Insurance Company,* 15 *Johns.* 392.

But it is insisted that, the *Maryland Savings Institution* is deprived of the authority imputed to it, by the 6th section of its charter, which restrains it from doing "any act or acts in-

consistent with the privileges secured to the existing banking institutions in the city of *Baltimore.*"

By the acts of 1813, chapter 122 and 1831, chapter 131, in the 11th section of which it is enacted that, "in case of the acceptance of, and compliance with, the provisions of this act, by the several banks hereby required to make the aforementioned road, the faith of the state is further pledged to the aforesaid banks in the city of *Baltimore,* not to grant a charter of incorporation to any other banking institution to be established in the city or precincts of *Baltimore,* before the 1st January 1845."

Banking powers have been defined as consisting of the right of issuing negotiable notes, discounting notes, and receiving deposites. *See* 5 *Conn.* 383, *The People vs. President, &c. of Manhattan Co.* 15 *John.* 390, *The People vs. Utica Insurance Company.*

If then the creation of a corporation with any one of these banking powers is a violation of the faith of the State, plighted to the banks of *Baltimore,* the incorporation of the *Maryland Savings Institution,* is a violation of that pledge, whether the right of discounting be granted or not. The primary object of the legislature and of the company incorporated, the authority to receive deposites, has been explicitly given; and this is one of the three enumerated attributes of a banking institution. If the construction now contended for of the acts of 1813 and 1831 were sustained, it would follow that, all the *Savings Institutions* and *Insurance Companies,* created by legislative sanction in the city of *Baltimore,* since the year 1813 were violations of the faith of the state pledged to the banks of *Baltimore.* To disrobe itself of the power of creating such institutions, so highly beneficial to the public interest, was never designed by the legislature. The interference of the operations of such institutions with the concerns of the banks, was too unimportant, to induce the exaction of such a pledge from the State. The true interpretation of the engagement, entered into by the legislature with the banks was, that no charter of incorporation should be granted to any banking in-

stitution to be established within the city or precincts of *Baltimore,* clothed with the valuable and important power of issuing negotiable notes. The object of the banks being to secure to themselves the exclusive emission of bank paper within the prohibited district.

It is said that, a loan on such security as that given by the appellant, was not authorised by the charter of the *Maryland Savings Institution,* which requires two securities to be taken for all money lent. But no such requisition is to be found in the charter, and if there were, it has been complied with in making the loan in question, two securities having been given, one the personal responsibility of the appellant, the other the sixteen shares of hypothecated stock.

An objection was made to the form of the note discounted, that it was not a negotiable note. In this there is no weight, it is a note within the *Statute of Anne;* on it three days of grace are allowed according to mercantile usage, and it is as beneficial a security to the institution as if it had been made payable to its order.

The first bill of exceptions concedes that, the interest taken by the *Maryland Savings Institution* was the legal interest, which would have been payable on the note at the expiration of six months and three days; but insists that, it was the duty of the institution to have advanced to the appellant the entire sum of money specified in the note, and at the maturity thereof he was to repay the amount of the note with the interest thereon.

The fallacy of such a position is demonstrated by the note itself. It was payable six months after date and did not bear interest. If then the institution had advanced, upon the note, the amount expressed upon its face, according to its tenor, at the expiration of the six months, the institution would have been reimbursed the sum by it originally advanced, without any interest whatever. Such a mode of making a loan, on such a security, has no countenance from the charter of the *Savings Institution,* or the law of the land. Under this exception it is also insisted that, taking the interest in advance,

upon the discount of the note, is usurious, and avoids the note given as a security for the loan.    In *Floyer vs. Edwards, Cowp.* 115, *Lord Mansfield* said, "upon a nice calculation it will be found that the practice of the bank in discounting bills exceeds the rate of 5 per cent. (the legal rate of interest in England,) for they take interest upon the whole sum for the whole time; the bills run, but pay only part of the money, viz., by deducting the interest; yet this is not usury."    And in *Thornton vs. Bank of Washington,* 3 *Peters,* 40, the *Supreme Court* say, to sustain the defence it has been said that the receipt of the interest in advance for sixty four days, upon the discount of the note, is usury.    But we are all of opinion, that the taking of interest in advance upon the discount of notes in the usual course of business by a bank, is not usury.    The doctrine has been long settled, and is not now open for controversy.    And the same principle was decided in *The Bank of Utica vs. Wager,* 2 *Cowen,* 712.    *Agricultural Bank vs. Bissel,* 12 *Pickering,* 588, and *Fleckner vs. U. S. Bank,* 8 *Wheat.* 338,—in which latter case STORY, J., in delivering the opinion of the court, says, that an authority to make discounts, means an authority to receive the interest in advance.    By the act of assembly of 1832, ch. 152, all other corporate bodies, and all citizens and residents of this State, are, in respect to the mode of discounting and the rate of charging interest on loans, placed upon the same footing with the banks.

In the second bill of exceptions the defendant insists that, by *Rowlett's Tables,* the discount deducted from the note should have been four dollars and fifty-eight cents, whereas the deduction actually made was four dollars and sixty cents; and he thereupon prayed the court to instruct the jury, that if they believe the plaintiffs did intentionally exact and take from the defendant the sum of four dollars and sixty cents, as and for interest upon the sum so loaned by them, that the plaintiffs are not entitled to recover; because such exaction and taking of said sum for interest was corrupt and usurious, and avoids the contract of loan; which instruction the court refused, but di-

rected the jury that, the said exaction and taking of interest was not in itself usurious.

We do not stop to inquire whether, according to *Rowlett's Tables*, now made a part of the law of the land, two cents more have, in point of fact, been deducted for interest than is authorised by law.    But we assume, upon the hypothesis of the prayer, that two cents more were intentionally exacted as interest, than by the letter of the law the plaintiffs were warranted in receiving; and we are still of opinion that the court were right in refusing the defendant's prayer, and giving to the jury the instruction as stated.    In *Stockett vs. Ellicott*, 3 *Gill & John.* 123, a case where usury was set up as a defence to a note, given for the balance due on an account, containing items of principal and interest, and where in fact more than six per cent. interest had been charged, this court said, it is the intention that gives character to the transaction; the agreement, the intention of the parties, constituting a principal ingredient of usury.    In *Duvall vs. The Farmer's Bank of Maryland*, 7 *Gill and John.* 60, this court have said, that "the finding of an intention to take more than legal interest was indispensable. The calculations or deductions of interest according to *Rowlett's Tables* were in all cases legalized by the act of 1826, ch. 90, and the admission is, that the bank has always been in the practice of charging interest or discount agreeably to the calculations in *Rowlett's Tables*.    Now if it be true that the exception does show, greater interest or discount was in fact taken than was indicated by these tables, it would not necessarily follow that it was usury.    For that must depend on intention, and if designing to follow calculations which were lawful, and the admission of the uniform practice would seem to lead to such a deduction, they had, by mistake or error, and not by intention, deviated from the rules prescribed by *Rowlett*, a case would be presented from which usury could not be deduced."    A party who demands and takes as a discount, a larger amount than is authorised by *Rowlett's Tables*, intentionally exacts what he receives.    But whether this intentional exaction be the result of mistake or accident, or of a corrupt usu-

rious design, is a matter of fact to be submitted to the jury. In the prayer under consideration, the defendant's counsel called on the court to decide this fact, instead of leaving it to the jury. The prayer on that account was properly rejected, and the instruction given was fully sustained by the authorities referred to.

We think the court below were right in refusing the defendant's prayer, in his third bill of exceptions, for the same reasons that sustained the refusal in the second exception. Nor do we think that, the judgment of the county court ought to be reversed, on account of the court's instruction to the jury that, the exaction of the interest complained of, was not usurious, conceding, without a reference to *Rowlett's Tables*, to test the truth of the fact, that there was an overcharge of two cents in the calculation of interest in the absence of all proof indicating a corrupt and usurious design in making such overcharge, we regard it as too trifling and inconclusive a circumstance, to warrant the jury in finding a corrupt and usurious intention in the plaintiff. The pitiful amount of the sum exacted standing alone, rather disproves than proves usury. The finding of such a fact was therefore properly withheld from the jury.

Approving of the conduct of the county court as set forth in all the defendant's bills of exceptions we affirm their judgment. JUDGMENT AFFIRMED.

CHAMBERS, J., dissented.