THE UNITED GERMAN BANK OF BALTIMORE CITY, use of THOMAS R. CLENDINEN, ISIDOR RAYNER and H. W. RUSK, Receivers *vs.* HENRY KATZ.

*Construction of Act of 1868, ch. 471—Banking Privileges—Discounting by a Savings Institution—Estoppel in Suit on Discounted Note.*

In an action instituted by the appellant, a corporation duly incorporated as a savings institution under the Act of 1868, ch. 471, secs. 152–155, against the appellee to recover upon a note endorsed by the appellee and discounted by the appellant, it was HELD:

1st. That the appellant under the provisions of the Act of 1868, ch. 471, sec. 2, had no power to discount the note, but was prohibited from so doing.

2nd. That though the appellant had exceeded its powers, yet that was not available as a defence in this suit, and recovery could be had.

APPEAL from the Superior Court of Baltimore City.

The case is stated in the opinion of the Court.

*Exception.*—At the trial, the defendant offered one prayer (stated in the opinion;) which the Court (GIL-MOR. J.) granted, the plaintiff excepted, and the verdict and judgment being for the defendant, the plaintiff appealed.

The cause was argued before BOWIE, MILLER, ROBINSON, and IRVING, J., and re-argued before BARTOL, C. J., MILLER, ALVEY, IRVING and MAGRUDER, J.

*Isidor Rayner* and *Thomas R. Clendinen*, for the appellant.

The case of *Duncan vs. Md. Sav. Inst.*, 10 *G. & J.*, 299, is identically similar to this, and precisely the same reasoning applies to both. At the time that decision was rendered, there was the same prohibition against the exercise of banking powers that is now contained in the Act of 1868, ch. 471. It was contended there, that the Legislature had precluded itself from granting banking powers to the corporation in question, just as it is argued here, that the Legislature has prohibited any corporation from exercising such powers, and the reasoning with which the Court overruled the proposition in that case, applies with equal force to this. It has been supposed that this case has been overruled by an *obiter dictum*, that fell from this Court in *Hammond vs. Straus*, 53 *Md.*, 1, but a reference to that case shows that the case of *Duncan vs. The Savings Institution*, was not even referred to in the opinion of the Court; that in passing, this Court merely remarked that the Union Banking Company had exercised certain banking privileges which were not provided for in the general incorporation law, and which it must, therefore, have exercised under the special Act which was under discussion in that case. The question as to whether a savings institution could discount a negotiable promissory note, was not before the Court in that case,

and was not even indirectly involved in the controversy.
The banking privilege, which the Legislature intended to
interdict, was the issuing of negotiable bills and notes,
as a circulating medium in the community.   This is an
important as well as a dangerous franchise, and it was
intended that no corporation should exercise it, unless
under the safeguards provided for by the Constitution.
The discounting of a note is not a privilege of any sort;
any individual can discount paper.   The language of the
Act is to invest its funds in good security; a note may be
the very best sort of security.   Commercial paper, as a
general thing, is certainly a better security than specula-
tive stocks or bonds.   Why should the taking of that
class of securities be excluded, then, from the operation
of the Act?   Receiving deposits is a banking privilege,
yet a savings institution, as has been said in the above
case, could receive deposits without any enabling Act of
Assembly for that purpose.   It will be furthermore
noticed that there is no evidence in this record that the
corporation was in the habit of discounting notes, or in-
vested all its funds in that way.   On the contrary, the
only evidence before the Court was that it discounted
this one single promissory note.

It is, therefore submitted, that this question is *res ad-
judicata* in this State; that while decisions may be found
which incline to the contrary in other States, they all
rest upon statutory legislation, which expressly prohibits
this class of corporations from exercising the power of
discounting paper.   In this State there exists no prohibi-
tory legislation upon this subject; on the contrary, the
Act of Assembly, under which this institution was incor-
porated, in express terms, by any construction that can
be placed upon its language, gives it the right and power
to use its funds in this manner.   *Duncan vs. The Mary-
land Savings Institution,* 10 *Gill & John.,* 299; *Gee vs.
The Alabama Life Insurance and Trust Company,* 13 *Ala-*

*bama*, 579; *U. S. Trust Company of New York vs. Brady*, 20 *Barbour*, 119; *State of Ohio on relation of John A. Corwin vs. The Urbana and Champaign Mutual Insurance Company*, 14 *Ohio*, 6.

The defendant is estopped from questioning the right of the corporation to discount this note. The principle that a corporation cannot exceed its chartered powers, is invoked for the benefit of those who would suffer by the exercise of the unlawful power. This is not a case in which a stockholder or depositor of this institution is contending for the illegality of the transaction, or attempting to prevent the corporation from exercising a power not conferred by its charter; but it is the case of an executed contract, as far as the corporation is concerned, and of a party who has received the full benefit of the transaction attempting to evade the corresponding responsibility that he has incurred. The appellee presents this note to this corporation, procures it to be discounted upon the faith of his endorsement, and when the note matures, refuses payment, upon the ground that the corporation had no right to discount the note which it received upon the faith of his own act; and he does this without pretending to return the consideration that has been paid upon the note. What then would be the consequence of allowing the principle of *ultra vires*, to operate in a case of this sort. It would re-act upon the very class of persons, (creditors and stockholders,) for whose benefit and advantage alone it exists. They do not claim that the corporation could not exercise this power; on the contrary, they depend upon the proceeds of this and other notes for a return of the money which they have deposited in this institution. To call into play the doctrine of *ultra vires*, in this case, would prevent the creditors of this insolvent corporation from following its funds into the hands of the persons who have received them; and would entirely preclude them from obtaining even the smallest return for

the savings and earnings which they have entrusted to this corporation. Whatever conflict there may be in the earlier decisions on this subject, it is submitted that the better considered authorities, and especially those in this State, establish the existence of the doctrine of estoppel *in pais* in a case of this sort. *Albert and Wife vs. The Savings Bank, et al.,* 11 *Md.,* 172; *Shoemaker vs. The National Mechanics' Bank,* 31 *Md.,* 396; *Steam Navigation Company vs. Weed,* 17 *Barbour,* 378; 2 *Potter's Law of Corporations, p.* 663, *secs.* 538, 548, and cases referred to on said page.

*H. L. Bouldin* and *M. S. Weil,* for the appellee.

The appellant became a corporation under secs. 152 to 155 of the Act 1868, ch. 471, which relate only to saving institutions. Saving banks are agents or trustees for depositors. 20 *Conn.,* 111; 32 *Conn.,* 173; 38 *Id.,* 203; 43 *Id.,* 155. For difference between savings bank deposit and regular bank deposit, see 37 *Barb.,* 129. This case involves the construction of the Act of 1868, ch. 471, sec. 2.

The term " banking powers " is an authority to deduct. the interest at the commencement of loan, or to make loans upon discounts instead of the ordinary form of security for an accruing interest. " The principal attributes of a bank are the right to issue negotiable notes, discount notes and receive deposits." *New York Fire Ins. Co. vs. Ely,* 2 *Cowen,* 710; *Weckler vs. First National Bank,* 42 *Md.,* 592.

The discounting of money on notes is peculiarly a banking power. *New York Fire Ins. Co. vs. Ely,* 5 *Conn.,* 573; *Fleckner vs. U. S. Bank,* 8 *Wheat.,* 350.

For a savings bank to prosecute the business of a bank of discount is unlawful, and the notes discounted by it cannot be by it proved in bankruptcy proceedings. *In re Jaycox,* 12 *Blatchford,* (*U. S.,*) 209.

" True discount is in effect, a mode of loaning money; and so far as the mischief intended to be guarded against

by the Act is concerned, the difference between loaning money by discounting the notes of third persons, and doing so directly upon the note and mortgage of the borrower may be immaterial, but the difference itself is substantial, and according to established definitions, distinguishes between banking and the mere loan of money." *O. and W. T. and I. Co. vs. Rathburn*, 5 *Sawyer*, 36.

" The ordinary meaning of the term 'to discount' is to take interest in advance, and in banking is a mode of loaning money." *Weckler vs. First Nat. Bk.*, 42 *Md.*, 592.

Loaning full value, not discounting ; there must be a deduction at the commencment of the loan. 1 *Hilton*, (*Wis.*,) 98.

In *Hammond vs. Straus*, 53 *Md.*, 1, one of the questions was whether the Union Banking Company of Baltimore City, incorporated under the Act of 1868, ch. 471, same as the appellant, as a saving institution, had accepted the Act of 1874, ch. 118, incorporating it as a banking company. The Court said, "to prove the fact of acceptance, it was only necessary to show, in connection with the Act of incorporation itself, that the parties incorporated had actually used and exercised the privileges conferred by the Act, and if such act of user and exercise of privileges could only be referred to the Act of incorporation, would fully justify the presumption that the Act of incorporation had been accepted," and " that the facts and circumstances, in proof, required that the question of acceptance of the Act of incorporation should have been submitted to the jury," and " that the Act contains the grant of large and valuable franchises, that the same parties named in the Act were afterwards found conducting a regular banking business, under a name substantially that authorized by the legislative Act of incorporation, with all the external *indicia* of a regularly organized bank of discount and deposit such as that Act authorized, and when the exercise of such power would have been illegal and wholly

unauthorized under the law if not derived from the Act of 1874, ch. 118, constituted evidence certainly tending to prove that the Act of incorporation had been accepted." The Court had the precise question before it of what was, and what was not banking powers ; and the Court decided that conducting a bank of discount and deposit was illegal and wholly unauthorized under the Act of 1868, ch. 471. The case of *Hammond vs. Straus* in effect overrules *Duncan vs. Md. Sav. Inst.*, 10 *G. & J.*, 299. The Court could not certainly have meant to decide that a corporation formed under the Act of 1868, ch. 471, could discount notes ; but that they could not receive deposits, and if they discounted notes and also received deposits they were doing a banking business, when the Act of 1868, ch. 471, sec. 152, under which the Union Banking Company of Baltimore City was formed, same as the appellant, authorized it to receive deposits.

The contract was in violation of the appellant's charter, and Chief Judge GARDINER, of New York, speaking of contracts in violation of banking Acts, says : "That the contract was not only unauthorized, but illegal. No action could be sustained upon it if executory in its favor, nor set it aside if executed, nor could it become the foundation of an implied assumpsit on behalf of the offending party." *Gillett, Receiver vs. Phillips,* 13 *New York,* 114 *and* 119 ; *Re Jaycox,* 12 *Blatchford, (U. S.,)* 216.

The contract was in violation of the appellant's charter, and MILLER, J., speaking of a corporation discounting notes when it was expressly prohibited from exercising banking powers, says, "the discounting of notes by the plaintiff, was an exercise of power which is expressly prohibited by law."  *  *  "The Legislature having thus aimed to restrain illegitimate and improper banking, the Courts are bound to carry out the law, and to see that it is not violated." *N. Y. State Loan and Trust Co. vs. Helmer,* 77 *N. Y.,* (32 *Sickels,*) 68 *and* 69.

Unit. Ger. Bk., use of Clendinen, *et al.*, Receivers *vs.* Katz.

Upon the question of estoppel, the language of MILLER, J., in the case of *N. Y. State Loan and Trust Co. vs. Helmer*, 77 *N. Y.*, 71 *and* 72, seems conclusive where he says, " that notes were discounted without any authority of law, and in the very teeth of the statutes, cannot be denied ; and do not bring the case within that class of decisions where the party having received the benefit of a contract is not allowed to repudiate it, because the other party had no power to make it. Such cases rest upon the principle that the contract was an innocent or lawful one ; and in this respect differs from a case where the act was illegal and expressly prohibited by law. Where there is fraud or illegality, the Courts will not aid either party in enforcing the contract, or in setting it aside, or in recovering back what has passed between them."

No recovery can be had on a prohibited contract. 55 *Ills.*, 92 *and* 93; *Lazear vs. National Union Bank of Baltimore*, 52 *Md.*, 124 ; *Green's Brice's Ultra Vires*, (2nd Ed.,) *notes* 732, 738, 739, 740, 741, 742 *and* 743.

IRVING, J., delivered the opinion of the Court.

The specific question which we are called on to decide in this case, is whether the appellant, The United States German Bank of Baltimore City can, under its charter, recover upon a promissory note, which it has procured by discounting.

This corporation was made such by certificate executed and acknowledged, certified by a Judge of the Supreme Bench of Baltimore City, and recorded under the provisions of Article 26 of the Code of Public General Laws as enacted by Act of 1868, ch. 471. The second clause of its certificate states, "that the corporation so formed, is a corporation for the purpose of receiving from any person or persons or bodies corporate or politic, any deposit of money, which shall be invested or loaned out on good security, in the discretion of its directors, as provided for in

Article 26, Maryland Code of Public General Laws, secs. 152 to 155 ; that the term of existence of the said corporation is limited to forty years ; and that the said corporation is formed upon the articles, conditions and provisions herein expressed, and subject in all particulars to the limitations relating to corporations, which are contained in the General Laws of the State."

The fourth clause of the certificate certifies, " that the aggregate of the capital stock of the said corporation ·is one hundred thousand dollars, and that the said capital is divided into four thousand shares of the par value of twenty-five dollars each."

In March, 1878, the note upon which this suit was. instituted, was discounted by this corporation, and its. collection is resisted on the ground, that having been incorporated under the provisions of the Act of 1868, it not only acquired no power to discount, but is, by the second section of that Act, expressly prohibited from doing such business.

By the second section of this Act of 1868 it is provided " that no corporation created or to be created, and not expressly incorporated for banking purposes, shall by any implication or construction be authorized to exercise banking privileges, or to issue any note, token, device, scrip, or other evidence of debt to be used as currency."

The lower Court instructed the jury " that if they shall find from the evidence that the plaintiff was incorporated under the provisions of the Act of 1868, ch. 471, secs. 152 to 155 inclusive, and was not expressly incorporated for banking purposes, then the said plaintiff was prohibited from discounting the promissory note which is the cause of action in this case; and if they shall further find that the promissory note was discounted by the plaintiff, the plaintiff is not entitled to recover and their verdict must be for the defendant." The appellant contends this ruling was. error, and relies on the decision of this Court in *Duncan vs. The Maryland Savings Institution*, 10 *G. & J.*, 299.

That there is strong analogy between that case and the one at bar cannot be denied ; but the analogy is not perfect ; and in view of the very broad language of the second section of the Act of 1868, ch. 471, as contrasted with the language of the several Acts of Assembly involved in the decision of the *Duncan Case,* we do not think that case can control the decision of this.    In that case the Maryland Savings Institution had discounted a note and brought suit to collect it, as here the receivers of the United German Bank have done.    As is done in this case, payment was resisted on the ground, that the Maryland Savings Institution had no power to discount and in fact was prohibited from discounting, and therefore, could not recover. The institution was incorporated by ch. 189 of the Acts of 1826.    The third section of the Act of incorporation among other things provides, that it shall be competent for the corporation  " to regulate the manner of receiving deposits," and " to provide for the investment of the funds of the corporation in such manner as they shall deem most safe and beneficial."    The fourth section provides that " said corporation shall be capable of receiving from any person, or persons, any deposit or deposits of money, and that all moneys so received shall be invested in stocks or other securities at the discretion of the directors, and in the manner deemed most safe and beneficial."    The same section exempted the members of the corporation from personal liability for the debts of the corporation, and that no funds should be loaned to an officer or director of the institution.    By the sixth section of its charter, it was declared that nothing in this Act shall be held or construed to authorize the company incorporated by this Act, to do any act or acts inconsistent with the privileges secured to the existing banking institutions in the City of Baltimore, by the Acts of 1813, ch. 122, and 1821, ch. 131, or by any other Act or Acts now in force."    The eleventh section of each of the last mentioned Acts had pledged the faith

of the State, to the banks accepting the provisions of those Acts, and doing what was thereby required of them, not "to grant to any other bank" in Baltimore a charter until after a designated period, which had not expired when that charter was granted; and the sixth section above quoted was inserted in compliance with that pledge, for the purpose of restricting the institution thereby incorporated to a business not violative of the banks' rights under the State's pledge.

Judge DORSEY in delivering the opinion of the Court said, "that banking powers have been defined to consist of the right of issuing negotiable notes, discounting notes and receiving deposits."

He then said, "if the creation of a corporation with any one of these banking powers is a violation of the faith of the State, then the incorporation of the Maryland Savings Institution is a violation of that pledge, whether the right of discounting be granted or not." He said that the right "to receive deposits was a banking privilege," and although that was conferred, it was not contended that thereby the pledge of the State was violated. The Court therefore concluded that the right to discount was not intended to be prohibited, but that which was intended was the banking power of issuing notes to be used as a currency. The pledge of the State in the Acts of 1813 and 1821, was a simple pledge not to charter any other bank in Baltimore City within the designated period. It was a promise on the part of the State, in consideration of the acceptance by the banks then existing of the conditions of their existence and tax on them, not to create any other corporation with their collective or aggregate powers. Unless the institution therefore did or could use all the powers of a bank, it was not a violation of that pledge; and the sixth section of the charter of the Maryland Savings Institution was given a construction having that effect.

The law before us now for construction is broader and more emphatic. The second section of the Act of 1868, ch. 471, is very express. It says, "no corporation not expressly incorporated for banking purposes shall by any implication or construction be authorized to exercise banking privileges, or to issue any note, token, device, scrip, or other evidence of debt to be used as currency." With the exception of the inhibition against implication or construction being resorted to, to accord to institutions not expressly incorporated as banks in their full sense, banking privileges, it is the same provision which is found in the seventeenth section of the Code of 1860; and that section is taken from the Act of 1852, ch. 231, sec. 5. The provision, in substance, is therefore not a new one, but an old one rendered more stringent and emphatic by the addition of the language forbidding the resort to implication and construction to accord privileges not expressly and unambiguously conferred. It is a plain declaration by the Legislature, that the natural meaning of language is not to be tortured by construction or implication to include privileges not expressly given. The charter of the institution in *express terms* gives nothing but the power to receive and invest deposits. The language of the second section of the Act of 1868, is as plainly directed against other privileges as it is against the issuance of notes as currency, The only privileges belonging to banks besides issuing notes, are to receive moneys on deposit, and the right to discount promissory notes. These three privileges are given by Judge DORSEY in *Duncan vs. The Maryland Savings Institution*, 10 *G. & J.*, 299, as answering the definition of bank privileges." He cites *The People vs. President, &c. of Manhattan Co.*, 5 *Conn.*, 383; and *The People vs. Utica Insurance Company*, 15 *Johns.*, 390. To these may be added *Morse on Banking*, 2; *New York Fire Insurance Co. vs. Ely*, 5 *Conn.*, 573.

Now, the prohibition of this second section of the Act of 1868, ch. 471, cannot mean the right or privilege of

receiving deposits, to be included within the inhibition, for the very Act of which it is a part, allows the incorporation of institutions in express terms, with the power of receiving deposits. The prohibition is, therefore, to be read as if it had said, "such bank privileges as are not accorded by this Act." The right to receive deposits, then, is to be excluded, as not within the meaning and contemplation of the Legislature. But one privilege, included in the definition of "bank privileges," is left to be intended by the words "banking privileges," which precede the words "or issue any note," &c., as currency, in the section under discussion. The first part of the section before the express mention "of notes to be used as currency," must mean something; and as receiving deposits is necessarily excluded, by subsequent express provisions in the Act allowing to corporations, such as this corporation is, the power of receiving deposits, discounting must be the thing intended to be prohibited by the phrase "banking privileges." Any other construction would not accord to every word of the Act its full meaning. "Implication or construction" could not possibly set aside a direct inhibition of issuing notes as currency. Those words manifestly were introduced to prevent something else. If the issuance of notes as currency was alone intended to be prevented, that would have been effectually accomplished by omitting all that is said about banking privileges. It would seem as if language had been expressly chosen to prevent an interpretation such as was given the Acts of Assembly involved in the *Duncan Case;* for the law says, it shall not be held by "implication or construction" to embrace banking privileges. In the case of *Hammond vs. Straus,* 53 *Md.,* 1, this view was taken of the provisions of this second section of the Act of 1868, ch. 471; although it was only incidentally considered and applied, and that, without any special reference to the case of *Duncan,* in 10 *G. & J.;* for it does not

APRIL TERM, 1881.          141

Unit. Ger. Bk., use of Clendinen, *et al.*, Receivers *vs.* Katz.

appear that the case was cited in argument, or was in the mind of the Court. The language of the statutes considered in that case, was materially different; and we do not pretend to question the propriety of that decision. In this case, we think the statute, by logical test, is free from ambiguity, and properly controlled the decision of the case of *Hammond vs. Straus.* There the Court said, that "discounting notes," among other acts, which could only be referred to the authority by legislative charter, to carry on banking was an act, with others, to go to the jury, from which the jury might find the "Union Banking Company" had accepted the charter given by the Legislature. To be evidence, the Court said, the several acts of the company must be such as could only be referrible to *banking* authority, "and as *would be illegal and void*" acts, unless they could be so referred. It was, therefore, a determination by the Court, that, by virtue of the charter, acquired by certificate, made, executed and certified under the Act of 1868, it could not discount; for, if it could do so under that charter, it was clearly not evidence of having accepted another.

Both, upon reason and upon authority therefore, we think the appellant, The United German Bank, had no authority to *discount* promissory notes. It does not follow, as a consequence of this view, that because the appellant exceeded its legitimate powers in procuring this note by discounting the same, that recovery cannot be had. If he received the plaintiff's money, or was the knowing instrument of some one else doing so, he ought not to escape liability to pay on that ground. It might be good ground for proceedings to forfeit its charter, but, in a case like this, it is not available as a defence. In 2 *Potter's Law of Corporations,* 663, it is stated, that there are some well recognized legal and moral distinctions, in respect to this doctrine of *ultra vires;* "one of which is between executory and executed contracts." As to executory contracts

" if made in excess of authority the Courts, at the instance of a stockholder, will interfere to prevent performance, because such contracts contemplate an unauthorized diversion of corporate funds, and are, therefore, a breach of trust. But the rule is different in regard to *executed* contracts ; these by the plainest rule of good faith should be permitted to stand." A large array of authorities is cited by the learned author in support of the statement in the text. And *Sedgwick* in his work on *Constitutional Law*, page 73, says, that although a corporation in making a contract " acts in disagreement with its charter," yet " a party, who has had the benefit of the agreement, cannot be permitted to question its validity." The doctrine thus stated by these text-writers is fully sustained by judicial decisions in this State, the Supreme Court of the United States, and several States of the Union. *Abbott and Wife vs. The Savings Bank*, 2 *Md.*, 172 ; *National Mechanics' Bank vs. Shoemaker*, 31 *Md.*, 396 ; *Steam Navigation Case*, 17 *Barbour*, 378 ; 53 *Howard's Practice Reports*, 506 ; 6 *Otto*, 258 ; 8 *Otto*, 621 ; 63 *N. Y.*, 62.

The principle upon which all these decisions proceeds is, that it is inequitable to permit one who has received the proceeds and benefit of the contract, to repudiate it on the ground, that the corporation from which he has obtained the benefit had no power to make the contract. It has been insisted in argument that the case of *Jesse Lazear vs. The National Union Bank of Baltimore*, 52 *Md.*, 78, has established a different doctrine in Maryland. We do not understand that case to establish that where there is entire privity between the parties recovery may not be had. In that case the suit was upon the guaranty of the defendant, and he was not found to have been privy to the transaction by which the money was procured. The distinction is material and substantial. It is the person who actually participates in the contract, that is to be held liable, in the case of an executed contract,

Unit. Ger. Bk., use of Clendinen, *et al.*, Receivers *vs.* Katz.

under the rule laid down in the authorities cited. In this case the appellee endorsed with the knowledge that the note was to be taken by the bank by way of discount. He signed his name with the knowledge that the money was to be given by the bank upon that being done. He is shown to have gone to the bank to give his name on the paper. Whether he received the money personally or not is immaterial, if by his procurement some one else did get the money upon the faith of what he did. It was all one transaction. Under the circumstances we do not think he can be heard to dispute the bank's right to recover, on the ground that it exceeded its charter rights in discounting the note. We think the Court erred in granting the instruction given.

*Reversed and new trial awarded.*

(Decided 1st July, 1881.)

BARTOL, C. J., dissented and filed the following opinion :

The power of a Savings Institution, incorporated under the Act of 1868, ch. 471, conferred by the 152*nd section* of the Act, "to receive deposits of money and to invest the same, or to loan it out on good security in the discretion of the directors" includes, in my opinion, the power to loan the funds of the institution by discounting promissory notes. This is not, in my judgment, such an exercise of "banking privileges" as was intended to be prohibited or forbidden by the *second* section of the Act. On this point I concur in the opinion of my brother MILLER; and for the reasons expressed by him, I think the instruction given by the Court below was erroneous, and the judgment ought to be reversed.

With respect to the second point, it is perhaps unnecessary for me to express an opinion. But as the decision of the case has been rested upon it, it may not be improper for me to say, that in my view, even if it were conceded

that the Savings Institution was not authorized by its charter to discount the promissory note sued on; under the proof in the cause, the appellee would be estopped from setting up that defence, and the appellant would be entitled to recover. On this point I concur in the opinion of the majority of the Court.

MILLER, J., dissented and filed the following opinion:

In my opinion a Savings Institution incorporated under the Act of 1868, ch. 471, has the power to discount promissory notes. In section 29 of that Act, Savings Institutions are mentioned as one of the classes of corporations authorized to be formed under the general provisions of the statute; and by section 152 it is enacted "that any Savings Institution incorporated under this Article, shall be capable of receiving from any person or persons, or bodies corporate or politic, any deposit of money, which *shall be invested or loaned out on good security in the discretion of the directors;* provided no part of the funds of said corporation shall be loaned to any officer or director of such corporation." The power to receive deposits and the power to invest or loan them out on good security, are powers essential to the existence of such institutions. The question then is, does the power to invest or loan out the deposits on good security include the power to *discount* bills or notes. Thirty years before this Act was passed, language substantially and almost identically the same, had received an authoritative construction by the Court of Appeals in the case of *Duncan vs. Maryland Savings Institution,* 10 *G. & J.,* 299. In that case the institution sued the maker of a promissory note which it had *discounted,* and one of the main questions to be determined, as stated by the Court, was, had the plaintiff "the power of lending out any portion of its deposits, or of discounting therewith, promissory notes or other

securities for debt?" Its charter provided that "said corpo-ration shall be capable of receiving from any person or persons, any deposit or deposits of money, and that all moneys so received shall be invested in stocks *or other securities* at the discretion of the directors, and in the manner deemed most safe and beneficial," with a proviso that no part of its fund should be loaned to any officer or director of the corporation. This was the provision con-strued in that case, and it becomes necessary to quote the very language of the Court, as delivered by Judge Dor-sey, to see what construction was placed upon it.

"In incorporating this company," say the Court, "it was not the design of the Legislature to create a mere stock-jobbing institution, the funds of which were to be kept employed in buying and selling stocks, which, from the nature of business in receiving and paying off deposits, must have been the case, if all funds were exclusively appropriated to the purchase of stocks. Its charter, there-fore, gave to the directors a discretionary power to make investments in stocks or *other securities*. What is the nature of the security here alluded to? Anything given or deposited to secure the payment of a debt. The words 'other securities' therefore embrace bills, bonds, notes, mortgages, &c., *and the authority to make investments therein, clothes the institution with the power of making loans by way of discount.* The concluding proviso to this section of the Act of Assembly, ' that no part of the funds of said corporation shall be loaned to any officer or director of said corporation,' demonstrates the existence of the power we have ascribed to it. *The People vs. The Utica Insurance Company,* 15 *Johns.,* 392."

The decision upon this point, thus plain and emphatic, is not modified by, nor is it in any way dependent upon, anything else in the Court's opinion. The question whether the Savings Institution had the power, under this provision of its charter, to *discount* the note sued on,

necessarily arose, and had to be first decided, because it was a vital part of the plaintiff's case.   Whether the enactment of a charter containing such power as well as the power to receive deposits, was in violation of the pledge given to the existing banks by antecedent laws, was a matter entirely apart from the question as to what powers this clause of the charter *actually conferred*.   I take it then, that this is an unqualified adjudication, that the provision in the charter, above quoted, comprehended and granted the discount power.   When, therefore, the Legislature of 1868, said that deposits in savings institutions, "shall be invested or *loaned out* on good security in the discretion of the directors," with a proviso that no loan shall be made to any officer or director of such corporations, they did not use terms, *requiring a construction now to be placed upon them for the first time*, but terms which long before had been construed by the Appellate Court, as conferring the discount power, a power everywhere acknowledged to be a *banking privilege;* and the inference seems to me irresistible, that they employed these terms for the very purpose of granting such power.   Where the construction and effect of certain language in an antecedent statute, has been settled by the Courts, and the same terms are found in a subsequent statute upon the same subject, the presumption is that the Legislature had knowledge of, and adopted such construction, and that they used the same language with the intent that it should have the same effect.   For these reasons, I am convinced that sec. 152, confers the discount power, just as effectually as if it had been so stated *in totidem verbis;* and holding this to be the effect of that section I do not deem it necessary to consider the *general prohibitions* against the exercise of banking privileges, contained in the second section of this Act, because it is a familiar canon of construction, that where there is a *general* intention expressed in a statute, and in a subsequent part of the

APRIL TERM, 1881.                147

Unit. Ger. Bk., use of Clendinen, *et al.*, Receivers *vs.* Katz.

same statute, there is also a *particular* intention expressed *incompatible* with the previous general intention, the particular intention must be considered in *the sense of an exception.* *Dwarris on Statutes*, 765; *Stockett vs. Bird*, 18 *Md.*, 484. Upon this ground, I rest my dissent to so much of the opinion of the majority, as decides that this Savings Bank had no power to discount the note sued on.

Having decided that the plaintiff had no power to discount the note, the opinion of the majority further declares that it does not follow as a consequence, "that recovery cannot be had," and the judgment is reversed and a new trial awarded. To this also I am constrained to dissent, because I regard the proposition as in direct conflict with what was recently decided in the case of *Lazear vs. The National Union Bank of Maryland*, 52 *Md.*, 78. In that case the defendant had given the bank a written guaranty, to the effect that he would be responsible for "all *liabilities* of Lazear Brothers to the bank," to the extent of $25,000, and the suit was brought on this instrument. Among the items which the bank claimed was a note for $5000, *drawn by Lazear Brothers* which it had *purchased.* The defendant contended that the bank had no power to purchase this note, and having no such power, Lazear Brothers were not *liable* therefor to the bank, and consequently it was not within the terms of his guaranty. The question was therefore directly presented whether the bank could recover upon this note against Lazear Brothers, the makers, or in other words, whether the makers were *liable* therefor to the bank, and it was expressly so treated by the Court. It was, moreover, a new question in this State, and was twice elaborately argued by eminent counsel. In the opinion of a majority of the Judges who heard the case on re-argument, delivered by Judge GRASON, it is said : " This question was most thoroughly and ably argued by the counsel of the respective parties, and after a very careful consideration of the case, it was

held that the appellee acquired the note in question by *purchase* and not by *discount*, that such purchase was not authorized by the Banking Act, and that the appellee acquired *no title to the note and could not recover upon it.* The question has again been very fully argued upon notes filed by the counsel of the respective parties, and has again been carefully considered, and a majority of the Court concur in the opinion heretofore filed in the case, and in the conclusions therein reached." Besides this, the two cases of *Farmers' & Mechanics' Bank vs. Baldwin*, 23 *Minnesota*, 198, and *First National Bank of Rochester vs. Pierson*, 24 *Minnesota*, 140, referred to and relied on as sustaining the Court's own reasoning upon the subject, were cases in which suits were brought directly by the banks against the makers and endorser of the purchased notes, and in both, after elaborate discussions of the question, it was decided the banks acquired no title to the notes by purchase, and therefore could not recover upon them. So far as my experience has gone, no question was ever more thoroughly argued, more carefully considered, or more deliberately decided, than was this in *Lazear's Case.* I cannot suppose it is the intention of the majority of the Court in this case, to overrule that decision, but where the distinction is, I am unable to discover. If the Union Bank in *Lazear's Case* acquired no title to the note, and could not recover upon it, because it had, under its charter, no power to purchase it, how can it be said that this bank *has* acquired title to this note, and *can* recover upon it, notwithstanding it has, under its charter, no power to discount it? If want of power in the one case is fatal to title and recovery, it must be so in the other.

The position taken is that if the defendant received the bank's money, " or was the knowing instrument of some one else doing so, he ought not to escape liability to pay " on the ground that the bank had exceeded its legitimate

powers in obtaining the note by discounting it.   The defendant, as the record discloses, is the endorser of this negotiable promissory note, but it was not discounted for his benefit, nor did he receive any of the bank's money in the transaction.   It is true he placed his name upon the note as endorser at the time the bank discounted it, and he unquestionably did so for the purpose of given credit to the paper, and to aid the party who obtained the money, in having it discounted.   In this sense, and in no other, was he the "knowing instrument" of some one else receiving the bank's money.   But the same thing may be said of every one who endorses a note under like circumstances.   It is a common practice for parties desiring to borrow money, to draw notes, procure the endorsements of their friends, and then take them to banks to be discounted.   A very large proportion of the paper discounted by banks comes to them in this shape, and it would be a novel doctrine to hold that a party who thus endorses a note, enters into any other contract, or incurs any other liability, than that of endorser.   I take it for granted that no holder of such a note, no matter how or under what circumstances he obtained it, could recover against the endorser, except upon proof of demand and notice.   The suit, as against him, must therefore be *upon the note*, to enforce his contract as endorser, and if the decision in *Lazear's Case* be law, it is competent for him to set up as a bar to the action, want of corporate power in the plaintiff bank to acquire the note either by purchase or discount.   The Lazear Brothers when they drew the $5000 note and placed it the hands of a broker to be sold or discounted, did so for the purpose of obtaining money from some one who would purchase or discount it, and they actually received the bank's money ; and yet it was plainly decided in that case, that want of power in the bank to purchase the note, was a bar to recovery, and absolved them from all *liability* to the bank therefor.   Upon the

assumption then that this Savings Bank had no power to discount this note, I do not see how it is possible for the plaintiff to recover in this case, unless the recent and carefully considered decision in *Lazear's Case* be overruled.